Gerald J. PEDEN

v.

The UNITED STATES.

No. 174–73.

United States Court of Claims.

March 19, 1975.

Otto G. Obermaier, New York City, attorney of record for plaintiff. Martin,

Obermaier & Morvillo, New York City, of counsel.

Marc J. Fink, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant. Paul A. Zoss, Washington, D. C., of counsel.

Before SKELTON, NICHOLS and BENNETT, Judges.

NICHOLS, Judge.

This action is brought before us on cross motions for summary judgment seeking our review of a decision by the Board of Appeals and Review (BAR) of the Civil Service Commission (CSC). Plaintiff is an ex-Government employee who was removed by "adverse action" and who asks the usual relief of reinstatement to the position and back pay. 28 U.S.C. § 1491, as amended. We find no triable issue of fact. The BAR decision is based on substantial evidence and is not arbitrary, capricious or contrary to law. Our review disclosed no prejudicial procedural error.

The plaintiff, Gerald J. Peden, was a GS–12 special agent of the Internal Revenue Service (IRS). His function was to investigate criminal tax frauds. The special agent is the unobtrusive fellow casually introduced to you midway in the audit of your income tax return, as the one who is now taking over. If you grasp the significance of his title, you gather your wits together and rush out to hire the ablest criminal lawyer you can obtain, at any cost. You know the prison doors are yawning for your reception.

Peden a veteran and "preference eligible," had served in the above capacity since 1961, and had an excellent record. He was attached to the Intelligence Division and operated in White Plains, Westchester County, New York, as his duty station. On January 26, 1970, agents of the Inspection Service, a related branch of the Treasury, gave Peden the usual *Miranda* warnings and he declined to answer any of their questions. They then informed him that Section 1941.71 of the Rules of Conduct for IRS employees required him to "respond to questions on matters of official interest." They wanted to question him about the tax liabilities of Peter Variano, Angelo Mascia, and others, they said, but he refused to furnish any information.

The following day Peden was formally arrested under warrant and charged with criminal violations. On January 28, 1970, the District Director of Internal Revenue served a formal notice on him, proposing to remove him from the Service for cause. On January 30, he was suspended for 30 days, without pay. The ensuing in-and-out minuet of criminal and civil proceedings lasting 2 and ½ years is the essence of this case, and the chronology is important. It presents real problems as to the proper way to go about removing a civil servant from office in face of dragged out criminal proceedings directly relating to his fitness to hold the office. It is the kind of case which possibly will not recur—or if it does, under different conditions—when the Speedy Trial Act of 1974, Pub.L. 93–619, 18 U.S.C. § 3161, is achieving its intended effect.

The January 28 "adverse action" notice makes three charges. Charge I is conspiring to bribe employees of the IRS to influence them in the performance of their official duties. Specification 1 under this relates to charges that plaintiff conspired with one Williams, representing taxpayer Variano, to have Williams pay bribes to various employees of the Manhattan District. The period stated is late October 1969 to early December 1969. Under Specification 2, plaintiff allegedly conspired with Williams, representing taxpayers Angelo Mascia and John Mascia, to the same ends. Charge II alleges failure to report the above conspiracies to higher officials. Charge III alleges refusal to answer questions on matters of official interest in the interview with the Inspection Service, mentioned above.

By 26 U.S.C. § 7214, part of the Internal Revenue Code, it is provided that if an officer of the United States, acting in connection with any revenue law, conspires to or colludes with any person to

defraud the United States, or does or omits to do any act with intent to enable any other person to defraud the United States, he shall be "dismissed from office or discharged from employment and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both." There is also a provision for judgment against the officer or employee in favor of any person injured.

This seems to say that immediately on the offense being known, not after conviction, the offender must be dismissed. Specifications 1 and 2 to Charge I allege matter seemingly requiring immediate removal, in view of this. Counsel have not discussed how this affects the case, and we do not treat it as decisive of anything. It does appear, however, that a point is early reached where a District Director is himself in violation of law if he knows of breaches of § 7214 and fails to take action.

On February 4, Peden requested a hearing. On February 5, he was given a new 30-day suspension. On February 17, his counsel appeared for him at the "oral reply", to be further discussed below. On March 4, the District Director formally removed Peden effective March 6. That day he appealed to the CSC which accepted the appeal on March 11.

On April 10, 1970, IRS refused to provide data on the case to the CSC, citing a request by the United States Attorney. On April 21, CSC notified Peden that the appeal was suspended pending conclusion of the criminal action.

Peden's attorney seems to have acquiesced in this for about a year; however, on April 5, 1971, he requested a hearing, which request he renewed on May 6, June 2, and June 9. On June 11, he appealed to the BAR.

All this time there was no indictment. Finally the District Court gave the Government a deadline to indict or drop the case. The Grand Jury handed down a 9-count indictment on June 24. The long delay is explained as due to the Government's need of testimony by Williams and one Powell, which was not available until Powell was convicted on June 10.

Peden's attorney applied again to the CSC on September 9, 1971, and on refusal he sued the CSC in the United States District Court on November 5. Judge Bonsal denied a preliminary injunction on the ground that a CSC hearing would allow Peden discovery of the criminal case against him far beyond the provisions of the Federal Rules of Criminal Procedure. We only know of this important decision through the affidavit of plaintiff's counsel, Mr. Obermaier. In spite of this unfavorable ruling, he credits the suit for causing the CSC to move. On December 27, 1971, it lifted the suspension with the consent of the United States Attorney.

On January 14, 1972, IRS provided its files to CSC and on February 9 and 10 the CSC hearing took place in New York. On April 5, CSC upheld the dismissal of Peden on all three Charges, only striking part of Specification 2 to Charge I. Peden appealed to BAR April 21.

On May 22–26, 1972, the criminal trial took place before a jury. The presiding judge, Judge Frankel, directed a verdict of not guilty on 5 counts. The jury itself acquitted on 2 and convicted on 2. The convictions were on two counts involving activity for taxpayer Angelo Mascia. The activity for taxpayer Variano was the subject of only one count, and that count fell by directed verdict.

On October 17, 1972, after further complaints of delay BAR affirmed the dismissal. This suit followed.

I

■ Defendant attempts to defend Charge III in face of Kalkines v. United States, 473 F.2d 1391, 200 Ct.Cl. 570 (1973). We cannot agree. The statements of the agents to Peden were a masterpiece of confusion. They told him per the *Miranda* formula that he could have counsel and did not have to talk. Thus, as a criminal investigator himself, he could have had no doubt he was suspected of having committed a crime.

Then they told him, per the Treasury regulation, that he did have to talk. No explanation or resolution of this inconsistency was offered. According to our *Kalkines* decision, a regulation of this Treasury type can be used to coerce information from a criminal suspect only if he is given adequate assurance that his responses will not be used against him in any criminal proceeding. No such assurance was given here. Terry v. United States, 499 F.2d 695, 204 Ct.Cl. 543 (1974), is not in point since there was no direct coercion by the agents and the regulation was not of the Treasury type. We do not consider Charge III further.

## II

■ We turn to the "oral reply" of February 17, 1970. The conferees were Mr. Birnbaum, a GS–14 attorney who headed a section that conferred with taxpayers on civil tax disputes, and Mr. Morvillo, attorney for Peden. We agree with defendant that Mr. Birnbaum had the personal qualifications we found lacking in the "oral reply officer" appointed by the same agency in Ricucci v. United States, 425 F.2d 1252, 192 Ct.Cl. 1; motion for reconsideration denied, 432 F.2d 453, 193 Ct.Cl. 120 (1970). As stated in the per curiam opinion denying rehearing, the purpose of the oral reply is "significant conference and negotiation with management." (432 F.2d at 455, 193 Ct.Cl. at 124). Mr. Birnbaum was well prepared to discuss Charge III, which involved legal rather than factual issues. He was not able to discuss Charges I and II at all, being wholly uninformed as to the factual foundation for them. We doubt if assigning an "oral reply officer" is normally adequate if he is as ill prepared as that. However, we cannot but regard the error as harmless in view of the circumstances. Peden, as both sides well knew, was a criminal suspect. Both sides went to the "oral reply" with no intention of discussing factual issues. This was assured on Peden's side by his staying away. Mr. Morvillo was free to make and did make the legal arguments he went there to make. Mr. Birnbaum's corresponding silence as to facts was assured by his knowing nothing he could wittingly or unwittingly reveal. The investigation was still going on, and informants' lives might have been endangered if a meaningful interchange on the facts had taken place.

The "oral reply" was more of a cat-and-mouse game than a negotiation, and in the circumstances nothing more could have been expected. The regulations are apparently defective in not providing for this common situation, and our *Ricucci* decision should have made it clear we were not speaking about an instance where the ousted employee was also a criminal defendant. We do not mean that the "oral reply" is not required in such circumstances, but that deficiencies in mere ritual should not by themselves trip up an agency in an adverse action if the employee gets the substance of what is realistic to expect in the circumstances.

## III

■ Plaintiff also says, or seems to say, that his appeal to the CSC was defeated only by evidence that did not exist or was not in the possession of the District Director when he signed the charges or when he removed the plaintiff from his position, and that the real issue was what evidence did the District Director then have. At the CSC hearing, incriminating evidence was given by Williams and Powell, who had recently themselves been convicted and would not, probably, have testified against Peden until that occurred. It is not denied and hardly could be that we have impliedly sanctioned the use of evidence (in proceedings of this type) that came into existence or became known only after the discharge. Cohen v. United States, 369 F.2d 976, 177 Ct.Cl. 599 (1966), cert. denied, 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967); Kowal v. United States, 412 F.2d 867, 188 Ct.Cl. 631 (1969). We suppose plaintiff's position to be that the District Director did not have probable cause on the firing date,

or if he did, he failed to perpetuate a record of it so we can determine on judicial review whether he had it or not.

 The case against Peden was originally made by two undercover IRS (Revenue) agents, Ruggiero and Fenton. During the investigation of Powell, Peden and Williams, they either carried concealed tape recorders or radio transmitters linked to remote tape recorders. In addition the IRS Inspection Service made transcripts and extensively debriefed Ruggiero and Fenton after each meeting with any of the suspects. Plaintiff has not and indeed cannot complain of any lack of contemporaneous record of these incriminating conversations.

The District Director did not hear the tapes or read the transcripts, but he had almost daily oral briefings on the unfolding events. However, by the hearing date his memory of just what he had heard had become fuzzy. It was a case of *quis custodiet custodes.* The special agents, supposedly the members of the Service most immune to any sin and error, were tainted by corruption to an unknown extent. Very wisely, and unlike some better known statesmen, he restricted knowledge of the investigation to the most urgent need to know, and created no files of papers when it could be avoided. It would be somewhat absurd to say there was enough probable cause for a judicial officer to issue a warrant for Peden's arrest, as occurred here, but not enough for preparation of adverse action charges. The knowledge of the institution was the District Director's knowledge too. What an executive officer's subordinates know, he is chargeable with knowing, for many legal purposes. And the District Director was not required, when he signed the charging letter, to have a file physically in front of him with all the transcripts, statements and documents in it.

What might happen if the District Director's knowledge could not be reconstructed to the extent that was done here, or if it should appear he signed the letter on the basis of insufficient evidence or none, which was supplied to an adequate level before the hearing, are questions that do not arise in this case, and we do not consider.

## IV

 The last serious issue is that of delay, and like the others, it is inextricably intertwined with the fact that criminal charges were pending. We believe it has long been the practice to "freeze" civil proceedings when a criminal prosecution involving the same facts is warming up or under way. In the context of appeals from civil service adverse actions, we have repeatedly approved this practice. Cohen v. United States, *supra*; Finn v. United States, 152 Ct.Cl. 1 (1961). *See also*, Polcover v. Secretary of Treasury, 155 U.S.App.D.C. 338, 477 F.2d 1223 (1973), cert. denied 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237. The novelty here is not that there was a freeze, but that it was lifted before and not after the criminal trial.

In *Polcover, supra*, Circuit Judge Tamm says the practice is for the protection of the employee, and therefore the question arises whether an employee, as Peden here, can waive this protection, clamor for a speedy hearing, and claim denial of due process unless he gets it. We do not think the impropriety of a civil hearing in such circumstances is necessarily eliminated in this way, unless the United States Attorney joins in the waiver, as eventually he did here. The "freeze" we think is not for the protection of the employee only, but also rises out of a sense that deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material.

 What would happen if the employee could show prejudice by the delay is a case not before us. We do not think any prejudice is shown here. It looks as if the agency was the more prejudiced if anyone was. It bore the risk, if its witness' memories had failed during the delay period, as to some extent they had. The plaintiff has not pointed to testimony he lost but would have presented had the hearing taken place sooner, and except by cross-examination he offered

none as it was. The main utility to plaintiff of having the hearing in advance of the criminal trial was the opportunity of cross-examining the witnesses the Government was going to use at the criminal trial, including the undercover agents. The facts strongly suggest that any other purpose in demanding such timing was strictly secondary. Plaintiff's able counsel seized the opportunity presented him with both hands. This plaintiff was as well served by having the hearing shortly before the criminal trial, as he would have been by having it shortly after the appeal was taken, and better served in that the convicted witnesses Powell and Williams were available for his cross-examination.

Certainly, a CSC hearing that is in the nature of a dress rehearsal for a criminal trial, in which all the Government witnesses testify and are cross-examined at length, but the defendant to be does not, is potentially a big lift to the criminal defense and could well be decisive in securing an acquittal, if anything could. We find it extraordinary that counsel for the employee should be here complaining about such advantageous procedure for him. In passing, we note that the United States Attorney for the District was not even allowed to have an observer at the CSC hearing, while counsel for the agency candidly admitted he was not a trial lawyer. He did not do all that badly, but it helps illustrate the values involved. Yet, under the law, it is at least doubtful whether the District Director could have delayed serving his removal notice, once he knew the facts. Here everyone seemed to be doing his best in a situation that was sticky for everyone. We call attention to the difficulties without offering criticism of anyone or having any pat solution.

V

Plaintiff does not deny that sufficient material was received at the hearing to constitute substantial evidence that he committed the offenses alleged in Charges I and II. His situation as to Charge I, Specification 1, the Variano case, is not aided by his directed

verdict of acquittal on the corresponding count of the indictment, Count 9. It is well settled that an acquittal on criminal charges does not *per se* impair the substantiality of evidence of guilt of a corresponding charge made in an appeal from a Civil Service removal for cause. *Polcover, supra, Finn, supra*; *See,* Helvering v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 82 L.Ed. 917 (1938); Silver v. McCamey, 95 U.S.App.D.C. 318, 221 F.2d 873 (1955). In view of plaintiff's concession we have not deemed it necessary to set forth the evidence in detail. We do note that the conspiracy periods set forth in Specifications 1 and 2 were only part of the periods that were shown to have existed by the evidence. Plaintiff does not make anything of this here, so neither do we.

Since the law required removal on Charge I, and since Charge II was established by substantial evidence, our disapproval of Charge III does not affect the result.

Accordingly, the plaintiff's motion for summary judgment is denied, the defendant's motion for summary judgment is granted, and the petition is dismissed.