Smith, Judge,
dissenting:
I respectfully dissent. Plaintiff received notice of discharge, on grounds of theft, from his position as a civilian security guard 2 days after he was discovered on the night of June 21-22, 1975, in the locked cafeteria at the Naval Surface Weapon Center in Dahlgren, Virginia. Plaintiff had just completed an 8-hour shift from 4 p.m. to 12 midnight and had commenced a second consecutive 8-hour shift when a supervisor interrupted plaintiffs consumption of a ham and cheese sandwich, 2 cartons of milk, and a small cake known as a "Twinkie.” Plaintiffs employment in law enforcement no doubt justified to some extent the ensuing flurry of investigation by his supervisors and by the Federal *788 Bureau of Investigation as well as the tidal wave of expulsion activity that followed.[1] Normally, I would agree that, where an appeal of a notice of discharge has proceeded through the feaa and the Appeals Review Board and the record contains substantial evidence to support their action, we should not reverse the administrative decision. There are aspects of this case, however, that call into serious question whether the feaa either reached the appropriate conclusion to remove plaintiff or even traveled an appropriate route to arrive there. Both parties may be at fault for this occurrence, but I would resolve any doubts by remanding the case to the Merit Systems Protection Board (mspb) for a rehearing where the distinctions between theft, and breaking and entering, would be clearly understood, or at least no longer be critical, and where new authority and new procedures evidence a strong likelihood that a just disposition of the case will be made.
The plaintiff in Ross[2] was not in law enforcement, but, like plaintiff here he had an unblemished record. Similarly, each such plaintiff was determined to have stolen Government property of relatively small value.[3] Yet in Ross, where the value of the lawn fertilizer stolen from Tinker Air Force Base was probably four to five times the value of the Twinkie and other food consumed in this case, we concluded that the agency’s assessment of termination as a penalty, given the specific facts of that case, was so unconscionably disproportionate to the offense committed by the plaintiff there as to constitute an abuse of discretion by defendant. Here, I think we can do no less than remand the case in order to give the mspb an opportunity to rehear it in an atmosphere not containing some of the elements present during the first go-around.
Certainly I would not wish to appear to condone theft, or a violation of any law, by Government enforcement personnel.[4] But it is disturbing to me that the evidence bearing on *789 the theft clearly raised an element of reasonable doubt that theft had occurred and, although this was not a criminal proceeding carrying that burden, it is a fact that there was a concurrent criminal investigation, resulting in an indictment of plaintiff, on a charge of breaking and entering with intent to commit larceny, by a United States Grand Jury 11 days prior to the feaa hearing.[5]
It is true that the board stated the record did not "reveal that the agency was aware of the criminal indictment, although the Naval Investigation Service was notified, which apparently informed the F.B.I.” A reading of the testimony of the supervisor who discovered plaintiff, stating that he was questioned by the F.B.I., and the testimony of guard supervisor Smith about his investigation of the charges against plaintiff, and testimony describing delivery of records to the F.B.I., all make it difficult to conclude that the agency was unaware, if not of the indictment, surely of the F.B.I. investigation which, in light of participation of its own personnel, would suggest a strong possibility of indictment.[6] Aside from the implications of the concurrent criminal investigation that, one might argue, possibly rise to a constitutional level, the feaa decision also demonstrates an evidentiary problem created by concurrent proceedings. The decision refers to the delay in plaintiffs claim that he had purchased elsewhere the food he was discovered eating in the cafeteria. The decision states that
*790 [recognizing the significance of this issue, a question arises as to why an employee would withhold such information particularly when he was afforded an opportunity to reply to the charge prior to the issuance of the agency’s final decision. Therefore, in the absence of any reasonable basis for this course of action, and any evidence substantiating the claims of purchase, we can attach no significant weight to the appellant’s contention.
One possible reasonable basis for plaintiffs failure to offer this evidence earlier in the removal process was his fear of somehow incriminating himself.
The use of a plaintiffs refusal to respond to an inquiry as substantive evidence of his creditability was the basis of the district court’s reversal of the agency’s action in Schwartz v. Secretary of Treasury.[7] There the district court held that, where concurrent proceedings are taking place, the Civil Service Commission could not consider the plaintiffs refusal to answer questions as substantive evidence of the plaintiffs creditability or as "conduct that did not 'comport with the actions of a person who considers himself innocent.’ ”[8] "The use of plaintiffs refusal to answer questions as substantive evidence was a 'penalty imposed * * * for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.’”[9] While the use of the plaintiffs failure to respond was more flagrant in Schwartz, and there was in that case a clear knowledge of the concurrent criminal proceeding, it is still troublesome that the feaa in this case gave any weight to plaintiffs failure to offer certain evidence at an earlier point in the investigation. Without the support of the negative inference, the evidence of theft, as revealed in the transcript, is not overwhelming, and leaves some doubt.
I am constrained from launching into a constitutional dissertation on the subject of the illegality of pursuing a civil action while a concurrent criminal investigation is in progress, especially where there is a strong indication that everyone involved here was perhaps indulging in tactical brinksmanship in avoiding the subject.
*791 Suffice it to say that there has developed a trend favoring suspension of any civil proceedings pending the outcome of parallel criminal proceedings. We have held that "deferra-ble civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material.”[10] The trend is reflected in changes in the Federal Personnel Manual (manual).
The manual outlines the proper agency procedures to be followed in personnel actions. The manual provisions, therefore, define the range of alternative actions open to an agency when it is proceeding with removing an employee.
The manual section, 6-3b(3), in force at the time of plaintiffs removal, stated:[11]
(3) When an employee is under criminal indictment for the same act for which his removal has been proposed and he asserts that the submission of his answer to the advance notice within the time allowed would prejudice his defense to the indictment, the agency should determine whether the record supports his contention. If it makes an affirmative determination, it should consider withholding further action on the removal until action under the indictment has been completed (see Silverv. McCamey.) If the agency does withhold action on the removal under these circumstances, it may wish to consider suspending the employee pending disposition of the criminal action. [Emphasis supplied.]
The 1980 revision of the section added the following statements:[12]
If the agency decides that the record does support the contention, it would be a good practice, supported by court decisions, to delay further action on the removal until action under the indictment has been completed. * * * [Also in most cases agencies will probably not be able to proceed with the administrative case without prejudicing the employee’s rights. * * * [Emphasis supplied].
*792 It is unfortunate that another step has not been required in the manual, either by statute[13] or regulation, to recognize the efficacy and importance of requiring some inquiry to determine whether a concurrent criminal proceeding is under way. This inquiry, and the reason for it, could easily be included within the notice of appeal rights given in a notice of proposed removal, in an appropriate boilerplate form which need in no way imply that there are criminal aspects related to the grounds for the action in a specific case. This procedure, while placing a small burden on the agency, would fully protect the employee’s rights and open up for both parties the evidence necessary for the civil hearing. In addition, it would avoid extended adversary proceedings before the boards and the courts, continuing long after unnecessary reversible procedural error has occurred. If in fact the feaa hearing was an exercise in tactical avoidance of the subject of the concurrent criminal proceeding, this should not be. It will have permitted this case to roll on, consuming valuable time and resources long after everyone concerned should have been aware of the high likelihood that reversible error had occurred and eventually would be found.
I respectfully suggest that the majority has dealt insufficiently with the "various procedural objections” raised by plaintiff. Furthermore, the transcript contains extensive testimony casting doubt on the treatment by the feaa and board of plaintiffs contentions regarding the unstated ground for removal. I have adverted to those aspects of the case as support for a recognition of the felt necessity for remanding this case to the mspb for rehearing on the entire removal charge, but I would remand in any event for a more reasoned consideration for purposes of determining whether the penalty imposed, in light of the many questions raised about the handling of this case, is proportionate to the offense found, and, if not, what penalty, if any, is appropriate.

 The reaction to plaintiffs alleged offense approached the intensity one might expect if he had thrown his Twinkie wrapper into the Okefenokee Swamp in front of Walt Kelly’s litter squad.

 Ross v. United States, 229 Ct.Cl. 755 (1982).

 In our Ross order 229 Ct.Cl. at 757, we stated "there is ample uncontested evidence to show that plaintiff was guilty of the offense charged.” In fact, the plaintiff in Ross admitted the taking in a signed statement.

 I have often pondered, not very deeply, whether the corner fruit vendor shared *789 the general amusement at the portrayal of policemen on the beat as enjoying some droit du seigneur regarding apples. In that ancient scenario no one ever seemed to demand dismissal of the patroling purloiner of pommes. Perhaps if the script had been otherwise, fewer Twinkies would disappear in midnight requisitions, but again I ponder, not very deeply, whether the pool of potential patrol persons would be quite sufficiently large to fill the need. If plaintiffs removal is allowed to stand he might consider taking up selling apples on the comer in competition with numerous other former public servants who do not opt for ledge-sitting. Collectively, they should have plenty of time to come up with satisfactory answers to the questions raised in this footnote, based upon reasoning more leisurely, if not more carefully, applied than that reflected in the board’s decision in this case.

 Plaintiff was tried and found not guilty on March 2, 1976, just 4 days after the Appeals Review Board upheld the ruling of the feaa on Friday, February 27,1976.

 For some time now theft has occupied a fairly clear position in the arrangement of things criminal as opposed to things lawful. On a scale of 1 to 10, at least since an earlier presence in the Sinai of the Israelites, theft has rated an "8” on the list of unlawful acts. Thus plaintiff, having been threatened with occupational discipline for an alleged theft, was a most likely candidate for criminal charges. The proposition that any of the characters in this drama was unaware of that possibility bears all of the badges of credulity displayed by a tale of toads and princes.

 Schwartz v. Secretary of Treasury, 364 F. Supp. 344 (D.D.C. 1973).

 Id. at 347.

 Id. at 348, quoting Griffin v. California, 380 U.S. 609, 614 (1965).

 Peden v. United States, 206 Ct. Cl. 329, 338-39, 512 F.2d 1099, 1103 (1975). The transcript here is replete with testimony on the subject of breaking and entering, the charge contained in the indictment but not contained in the removal action. The board’s cavalier treatment of this aspect of the case indicates a misunderstanding of the differences between the two offenses adverted to, if not arbitrary disregard thereof

 FPM Supplement 752-1, S6-3(bX3) (Feb. 4,1972).

 FPM 752, S3-3g(lXb) (Dec. 31,1980).

 Congress has required that Government contracting officers, in their notices of final decisions in contract disputes, enumerate the procedural avenues available to the contractor. It would seem at least as important that a similar caution be expressed where a person’s job on one hand and possible incarceration and/or fine on the other hand are concerned. See 41 U.S.C. § 605(a) (Supp. III 1979).