**C3, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 716–83C.

United States Claims Court.

July 30, 1984.

John T. Boese, Washington, D.C., attorney of record for plaintiff.

Judith Rabinowitz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

ORDER

REGINALD W. GIBSON, Judge.

This order addresses both "Defendant's Motion to Stay Proceedings" and "Defendant's Renewed Motion to Stay Proceedings" pending the termination of an on-going grand jury investigation into the activities of plaintiff touching matters postulated in subject complaint.

On December 2, 1983, C3, Inc. (C3) filed its complaint in this court seeking to collect $1 million, more or less, allegedly due it pursuant to the terms of contract # DAAB09–77–D–0004. Thereafter, and prior to filing its answer, Defendant's Motion to Stay Proceedings was filed on February 21, 1984.

While plaintiff strenuously opposed said motion to stay, the court by order dated April 2, 1984, deferred ruling on the initial motion, and concomitantly ordered the defendant to file its answer. 4 Cl.Ct. 790. The defendant's answer was, of course, then required to facilitate the court's determination as to whether the requisite elements for a stay, discussed *infra*, existed.

On May 17, 1984, defendant filed its answer as well as a counterclaim which contains allegations of fraud and False Claims Act violations. In addition, defendant also filed, at that time, Defendant's Renewed Motion to Stay Proceedings to which was attached its Supplemental Brief in Support of Defendant's Renewed Motion to Stay Proceedings.

Plaintiff's Opposition to Defendant's Renewed Motion to Stay Proceedings was filed on June 18, 1984. In plaintiff's supplemental opposition, consisting of forty pages and multiple exhibits, it underscored the fact that in its (defendant's) renewed motion to stay, defendant "frankly admitted that it cannot, because of Criminal Rule 6, state precisely what is at issue in the grand jury," and also averred the fact that defendant continues to rely on the original affidavit of Joseph J. Aronica to the effect that the investigation will be concluded "sometime this summer."

In view of the foregoing pleadings, the issues for decision on subject motion are as follows:

(1) whether a clear showing has been made by defendant, by indirect proof, that the issues in the civil action are "substantially similar" or "related"

to the issues in the criminal investigation;

(2) whether defendant has made a clear showing of hardship or inequity if required to go forward with the civil case while the criminal investigation is pending; and

(3) whether the duration of the requested stay is immoderate.

*See Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *Litton Systems, Inc. v. United States*, 215 Ct.Cl. 1056, 1057–58 (1978).

*Issue # 1—Substantially Similar or Related Issues in Both Cases:*

■ Although defendant candidly admitted that it "cannot prove *directly* that the matters before the grand jury are 'substantially similar' or 'related' to the issues in this case," [1] it emphasizes that definitive proof of said fact(s) is adequately established by overwhelming circumstantial evidence. In support of this contention, defendant avers that:

(i) the facts relied on by the United States in the civil action track those which led to the grand jury investigation, in that both surfaced from a unitary investigation by the Criminal Investigation Command of the Department of the Army;

(ii) the contract payments plaintiff presently seeks here, under contract # DAAB09–77–D–0004, have been characterized by the contracting officer as "tainted by fraud," and are the primary focus of the grand jury's investigation;

(iii) the affidavit of the responsible Assistant United States Attorney states that the grand jury is investigating C3 on allegations of fraud in connection with "the *same* contract at issue in this case" (emphasis added); and

(iv) the defendant's answer and counterclaim persuasively corroborate and demonstrate, given the forego-

---

**1.** Plaintiff's perception, *supra*, is markedly at variance to defendant's revelation. Defendant explains this impediment on the secrecy provi-

sions implicit in Rule 6(e), Federal Rules of Criminal Procedure.

ing, that C3's "claims [here] are inextricably interwoven with the United States' claims of fraud."

▇ The resolution of Issue # 1 requires no extensive comparative factual analysis by this court in order to conclude that the issues in the civil action are "related" as well as "substantially similar" to those in the criminal investigation. In fact, a critical reading of defendant's counterclaim,[2] plaintiff's complaint, and the affidavit of the responsible Assistant United States Attorney makes it clear to this court, beyond cavil, that not only are they related, but in large measure they are in fact "substantially similar." To establish subject element by the requisite quantum of proof, this court does not view the burden on the defendant to contemplate an *in haec verba* iron-clad comparison of separate issues by *direct* proof. We think it to be sufficient if defendant makes its *prima facie* showing of the ultimate fact, circumstantially, as it has astutely done here. Particularly whereas here, in proof of its counterclaim in fraud, the issue of whether plaintiff "fraudulent[ly] subverted the contract" and is thus liable to the defendant substantially mirrors the issue(s) under investigation by the grand jury.

*Issue # 2—Clear Hardship on the Defendant:*

Inasmuch as it is patently clear that the issues in both proceedings are "related" as well as "substantially similar," it is equally apparent that there will be a substantial, if not a total, overlap of witnesses and documentary evidence. It is misplaced to argue that the dichotomy between the character of the respective cases, *ipso facto*, precludes them issue-wise from being "related" and/or "substantially similar." Should this court deny defendant's motion, it is

inevitable that the "broader discovery permissible in civil proceedings [will undoubtedly] compromise [the] parallel criminal proceedings" (*Litton Systems, Inc.,* 215 Ct.Cl. at 1057–58) since each will "churn over the same evidentiary material." *Peden v. United States,* 206 Ct.Cl. 329, 339, 512 F.2d 1099 (1975).

▇ The court agrees, therefore, that on the authority of *Litton Systems, Inc.,* supra, and *Peden,* 206 Ct.Cl. at 338–39, 512 F.2d 1099, the interest of justice requires continued application of the "practice to 'freeze' civil proceedings when criminal prosecution involving the same facts is warming up or under way [so as to obviate] improper interference with [on-going] criminal proceedings." Furtherance of the public interest on this showing requires nothing less.

*Issue # 3—Duration of Requested Stay:*

In its initial motion for stay defendant requested a stay "until such time as criminal prosecution is either completed or declined."[3] However, in its renewed motion for stay defendant generally requests a stay "pending termination of the grand jury and, if an indictment is returned, until the conclusion of [the] criminal trial," and in specific terms a stay of "four to six months."

Given the extant circumstances of this case, we do not view the foregoing request to be, as plaintiff contends, either indeterminate or immoderate. To the contrary, this court views the public interest criterion sufficient to compel that the civil matters be administered so as not to contaminate the criminal investigation/trial. This court also agrees with defendant that the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* will of

---

2. Defendant's counterclaim, consisting of three counts, meticulously details the alleged false and fraudulent claims proffered therein, including but not limited to 1,000 false invoices presented, which purport to indicate that plaintiff bilked the United States out of millions of dollars.

3. In his affidavit (dated February 17, 1984), the Assistant United States Attorney advised that "I expect the grand jury to complete its investigation *sometime this summer.*" (Emphasis added.)

necessity expedite a criminal trial, if appropriate.

Plaintiff avers that it will be harmed financially by a stay[4] in that it would be denied the receipt of the payments, thereby impeding its cash flow, for the unjustifiable period of the stay. It is sufficient to say, however, that plaintiff cites no obligatory authority for the proposition that such a circumstance, assuming it to be true, is a bar to defendant's entitlement to a stay whereas here the burden is persuasively carried.

Curiously, it is observed that plaintiff cites to no Court of Claims or Court of Appeals for the Federal Circuit authority supportive of its position. While it does cite *Landis, supra,* it suffices to say that said case is factually distinguishable from the instant case. Moreover, as defendant rightly observes, plaintiff makes no effort to either refute or distinguish the binding authorities cited to it by the government.

### CONCLUSION

■ "[I]n cases of extraordinary public moment, the [adverse party] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis,* 299 U.S. at 256, 57 S.Ct. at 166. This is such a case.

Premised on the showing proffered by defendant, *supra,* and applicable authorities, *Luigi Goldstein, Inc. v. United States,* 217 Ct.Cl. 733, *cert. denied,* 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978); *Litton Systems, Inc., supra,* and *Peden, supra,* defendant's motion for a stay of the instant case is granted for a period expiring the earlier of the termination of the present grand jury investigation of C3, or six months from the date of this order, *i.e.,* January 30, 1985.

IT IS SO ORDERED.

4. It is alleged that its claim approximates ten    percent (10%) of its profits.