**AMPETROL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–676C.**

United States Court of Federal Claims.

Jan. 14, 1994.

Michael J. Schaengold, Washington, DC, for plaintiff; Benjamin L. Ginsberg and Peter R. Ginsberg, of counsel.

John Warshawsky, with whom were Asst. Attys. Gen., Frank W. Hunger, David M. Cohen, and Thomas W. Petersen, Washington, DC, for defendant; Shari Leventhal and Paulette Wunsch, of counsel.

## ORDER

BRUGGINK, Judge.

Defendant has moved to stay this case pending the outcome of criminal proceedings in *United States v. Joseph Reisch,* Cr. No. 93–598 (E.D.N.Y.). Plaintiff has filed an opposition. At defendant's request and with plaintiff's concurrence, argument on the motion was heard *in camera.* For the reasons stated below, the motion is granted.

The power of courts to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 257, 57 S.Ct. 163, 167, 81 L.Ed. 153 (1936). Determining whether a stay is granted "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–255, 57 S.Ct. at 165–66. The courts have not articulated a bright-line test for determining whether a civil case will interfere with an ongoing criminal investigation. Rather, a court must make this determination on a case by case basis. Decisions of this court do, however, list three factors that a court should consider. *See St. Paul Fire & Marine Ins. Co. v. United States,* 24 Cl.Ct. 513, 515 (1991); *C3, Inc. v. United States,* 5 Cl.Ct. 659, 660 (1984). First, the movant must make a "clear showing, by direct or indirect proof, that the issues in the civil action are 'related' as well as 'substantially similar' to the issues in the criminal investigation." *St. Paul,* 24 Cl.Ct. at 515. Second, the movant must "make a clear showing of hardship or inequity if required to go forward with the civil case while the criminal investigation is pending." *Id.* Third, the movant must establish "that the duration of the requested stay is not immoderate or unreasonable." *Id.*

The first factor is not seriously in doubt. Defendant argues that the underlying transaction in the civil case, Ampetrol's sale of gasoline to Rossi Associates Incorporated, will be the central focus of the criminal case. It is difficult to quarrel with that assessment. The complaint alleges a contract arising out of "the sales of gasoline by Ampetrol to Rossi, acting on behalf of the United States ... and from Rossi's and the United States' failure to pay Ampetrol for the gasoline sale." The particulars of the complaint allege that the United States created Rossi as a front organization as part of a larger undercover operation. Although Ampetrol is not a defendant in the criminal proceeding, one of the persons indicted is Martin Nociforo, president of Ampetrol during the events at issue in both the complaint and indictment. The indictment alleges that Ampetrol stood at the beginning of a "daisy chain" of companies that purchased gasoline free of excise tax from registered gasoline companies. It further alleges a conspiracy by organized crime to transfer on paper the ownership of the gasoline through a series of convenience companies in an effort to avoid ultimate payment of taxes. Part of the conspiracy alleged consists of creation of false invoices of tax-free sale to Rossi when "in fact the gasoline was sold to unregistered purchasers including N.Y.G.D., Inc.... No taxes were remitted to the United States

upon the gasoline sales to these unregistered purchasers."

The assumptions behind the indictment, at least insofar as Rossi is concerned, would appear to be that the sales were fictitious, fraudulent, illegal, or all three. It is inconceivable that these allegations would not figure into the government's defense here. In that event, the parties to the civil and criminal proceedings would be fishing in the same pond for evidence. The plaintiff, in its reply brief, concedes as much: "Ampetrol's allegations concerning its dealings with Rossi are related to the allegations contained in the [criminal proceedings]." Plaintiff's Brief in Opposition to Defendant's Motion to Stay Proceedings, p. 5.

The movant must also establish that denial of its motion will place it in a position of hardship or inequity. The primary reason that courts attempt to avoid concurrent civil and criminal proceedings is that "the broader discovery possible in a civil case should not be used to compromise a parallel criminal proceeding." *Litton Systems, Inc. v. United States*, 215 Ct.Cl. 1056, 1058, 1978 WL 8458 (1978). This is especially a concern where the concurrent criminal proceeding will "churn over the same evidentiary material." *St. Paul*, 24 Cl.Ct. at 516. This court and its predecessors have frequently cautioned that it "is reluctant to require the Government to proceed in civil litigation when related criminal procedures are still in progress." *Luigi Goldstein Inc. v. United States*, 217 Ct.Cl. 733, 734, 1978 WL 8446 (1978); *see, e.g., Litton Systems*, 215 Ct.Cl. at 1058; *Peden v. United States*, 512 F.2d 1099, 206 Ct.Cl. 329, 338–39 (1975).

Here, both parties agreed during oral argument that at least some of the evidence could figure importantly in both cases. Plaintiff wishes to take depositions and formally pursue the informal document exchanges that have occurred. The court recognizes that there is not a direct identity between plaintiff here and defendants in the criminal proceeding, and that there is not a relationship between counsel here and the criminal defendants. Consequently a protective order would be effective in limiting the disclosure of evidence beyond counsel. Ne-

vertheless, it would be naive to ignore the effect that the mere fact of discovery here, particularly deposition discovery, will have on the criminal proceeding. It would be impossible to limit the educational effect of a deposition on a witness, or the impact that the mere designation of discovery here might have in affecting strategy in the criminal proceeding. There would be competition in the next four months for documents and witnesses. Furthermore, even if the product of discovery here arguably would be legally unavailable to either side in the criminal proceeding, it is not difficult to imagine that efforts to obtain it or use it might create an unnecessary distraction for the criminal proceeding. In a situation such as this the public's interest in law enforcement "mandates that criminal proceedings be given priority over the concurrent civil proceedings." *St. Paul*, 24 Cl.Ct. at 516.

Finally, the movant must satisfy the court that a stay can be granted that is not immoderate or unreasonable in duration. The complaint here is recent. It was filed on November 4, 1993. There has been no answer. The indictment was returned on May 26, 1993. Counsel inform the court that criminal trial has been scheduled for early May 1994 and is expected to last 4–8 weeks. If the chronology were reversed, and this proceeding had matured to the point of an imminent trial, perhaps plaintiff would be able to claim that a stay was unreasonable. Plainly under the present circumstances, delaying for completion of the criminal proceeding is not.

Accordingly, defendant's motion is granted to the following extent. Pending further order, this action is stayed in all regards, with the following exceptions:

(1) The defendant shall file its answer on or before February 14, 1994.

(2) The defendant shall file reports on the status of the above mentioned criminal suit on May 6, 1994 and June 17, 1994.

(3) The parties may engage in voluntary informal document discovery.

Additionally, it is ORDERED that the *in camera* motion by the plaintiff to strike defendant's reply brief from the record is GRANTED for the reasons expressed to the

parties during oral argument. The Clerk is directed to return the original to defendant.