# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| GWENDOLYN DENISE PIERCE,<br>Appellant, | DOCKET NUMBER<br>DC-0752-15-0355-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE,<br>Agency. | DATE: September 6, 2016 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lisa Alexis Jones</u>, Esquire, New York, New York, for the appellant.

<u>Eura A. Cherry</u> and <u>Jack W. Rickert</u>, Springfield, Virginia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed her removal based on the charge that she knowingly made false statements with the intention of deceiving or defrauding the Office of Workers' Compensation Programs (OWCP). Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).    After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review.  We MODIFY the initial decision to incorporate the standards set out in the Board's decision in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), and supplement the administrative judge's analysis regarding the appellant's affirmative defenses of discrimination.  Except as expressly modified by this Final Order, we AFFIRM the initial decision.

¶2        Prior to her removal, the appellant was a Multimedia Specialist, pay band IA-4, at the National Geospatial-Intelligence Agency (NGA).  Initial Appeal File (IAF), Tab 5 at 44.  The duties of her position included preparing graphic arts products, such as designs for websites. *Id.* at 31.  The appellant stopped working during March 2012 owing to carpel tunnel syndrome, a repetitive use injury for which she underwent surgery, and other medical conditions, and she began to receive full benefits from the OWCP. *Id.* at 71-72, 89-90; IAF, Tab 22 at 13, 39. On or about June 22, 2013, she completed a form EN-1032 so that the OWCP could determine the level of benefits to which she would be entitled.  IAF, Tab 20 at 61-66.  She completed another EN-1032 on or about July 5, 2013. *Id.* at 68‑75. The EN-1032 collects information regarding employment, earnings, and sources of income, including income from self-employment and volunteer work, and information regarding the receipt of other Federal benefits such as disability retirement payments. *Id.* at 61-75.  The form warns those submitting it about

potential criminal prosecution and forfeiting compensation for reporting false information. *See, e.g.*, *id.* at 61, 63, 66. The appellant answered "no" in response to questions about whether she had worked "for any employer during the past 15 months" or was "self-employed or involved in any business enterprise in the past 15 months," and she answered in the affirmative when asked if she was "unemployed for all periods during the past 15 months." *Id.* at 61-62, 70‑71. When asked whether she had performed any volunteer work within the past 15 months, including "volunteer work for which ANY FORM of monetary or in‑kind compensation was received," the appellant answered "no." *Id.* at 62, 71 (capitalization in original).

¶3      In March 2013, the agency's Office of the Inspector General (OIG) received a tip that the appellant might be receiving OWCP benefits while she was being compensated for outside work. IAF, Tab 22 at 51. Together with the Department of Labor (DOL), the OIG initiated an investigation. IAF, Tab 5 at 30-32, 121, 123. Investigators obtained copies of several checks issued to the appellant by Petworth United Methodist Church for "ministry"[2] services between July 2012 and June 2103. IAF, Tab 20 at 77-88. Most of the checks were in the amount of $250. *Id.* The appellant endorsed and deposited the checks. *Id.* at 78‑85. Additionally, the investigators obtained her 2012 Federal income tax return, which showed a business loss of $26,216 for self-employment activities associated with a graphic design business and a company called "Matters of the Heart," which she described as "Ministries, Spiritual." *Id.* at 90, 98-101. One of the expenses the appellant claimed for Matters of the Heart was $2,000 for clerical robes and upkeep. *Id.* at 101. The appellant's 2013 Federal income tax return included business losses of $41,162 for Matters of the Heart. IAF, Tab 21 at 5, 13-15. Her itemized business expenses for 2013 included $1,200 for travel, $1,500 for editorial expenses, and $2,000 for clerical robes and upkeep. *Id.* at 15.

---

[2] The appellant holds master's and doctoral degrees in theology. IAF, Tab 21 at 46.

The record also includes a print‑on‑demand agreement dated March 22, 2013, between the appellant's business, Bennella Publishing Press, Inc., and Lightning Source, Inc. for the printing of her book. *Id*. at 17-19, 24-27. Additionally, the record includes documents reflecting other related business activities, such as Internal Revenue Service correspondence to "Daughter of Faith Health and Spiritual Healing Ministry," advertisements from the internet offering copies of the appellant's book and her services as a speaker, and YouTube links documenting her preaching and ministry services. *Id.* at 21-22, 45‑47, 49‑52; IAF, Tab 22 at 37. Based on this evidence, the agency determined that the appellant had knowingly provided false information on her EN-1032 forms with the intent to mislead. The agency removed her based on two specifications of the charge of making false statements. IAF, Tab 5 at 60, 77‑78.

¶4 Concurrently, the U.S. Attorney for the Eastern District of Virginia pursued criminal charges against the appellant. *Id.* at 110-11. She was charged with one misdemeanor count of making "false statements to the United States Department of Labor in connection with a claim for federal workers' compensation that was originally filed within the Eastern District of Virginia." *Id.* at 110. The record includes a transcript of her plea hearing on October 1, 2014, before the Honorable T. Rawls Jones, Jr., Magistrate Judge. *Id.* at 95-108. That transcript recorded the appellant's knowing, informed, and voluntary admission under oath to a misdemeanor count of making a false statement in connection with her claim for workers' compensation. *Id.* at 105-07; *see* IAF, Tab 21 at 29-36 (plea agreement). Judge Jones later dismissed the misdemeanor charge and vacated the plea when the Government was unable to document a specific financial loss for purposes of sentencing the appellant. IAF, Tab 5 at 34-42, 46‑58.

¶5 The administrative judge, however, sustained the charge. IAF, Tab 31, Initial Decision (ID) at 2-7. He rejected the appellant's affirmative defenses of discrimination based on race, sex, and disability, and retaliation for prior equal

employment opportunity (EEO) activity.[3]  ID at 7-17.  He found that the penalty of removal was reasonable and promoted the efficiency of the service.  ID at 17‑18.  The appellant filed this petition for review.  Petition for Review (PFR) File, Tab 1.

¶6    On review, the appellant asserts that she reported both ministry work and web and publishing activity when she was examined by Dr. R., an independent medical examiner, on March 15, 2013.  *Id.* at 5.  Dr. R., she asserts, related her activities in his report.  *Id.*  Dr. R. found her to be "disabled from the work that she was doing at the time as a graphic designer," but she could "continue to do work with the promotion of her books and public speaking if she were to be given assistance with movement of her supplies."  *Id.*; IAF, Tab 23 at 30.  Dr. R.'s report was incorporated in the appellant's workers' compensation file.  IAF, Tab 23 at 29.  Following her examination by Dr. R., the appellant asserts, her claim continued to be processed by the OWCP without incident, and no one from DOL, including the assigned claims specialist, requested additional information about her outside activities.  PFR File, Tab 1 at 5.

¶7    Based on his initial findings, however, M.G., the DOL investigator handling the appellant's case, recommended that the OWCP send her an EN-1032 to complete.[4]  *Id.* at 6; Hearing Compact Disc (HCD) (testimony of M.G.).  In the affidavit supporting his application for a warrant to search her home, M.G. stated that he had reviewed the appellant's OWCP records, that she had never reported any outside employment or related income, and that her physicians reported that she was "totally incapacitated."  (HCD) (testimony of M.G.); IAF, Tab 20 at 55.  The appellant suggests that this was a false statement because M.G.

---

[3] The appellant asserted discrimination based on race (African American), sex (female), disability, and retaliation for prior EEO activity.  IAF, Tab 1 at 6, Tab 23 at 7.

[4] The appellant explains that she completed the EN‑1032 in June and July 2013 at M.G.'s request, and the OWCP sent that EN-1032 in the normal course of business.  PFR File, Tab 1 at 6.

acknowledged on cross-examination that he had eventually seen the medical report and had not turned it over to the U.S. Attorney. PFR File, Tab 1 at 6-7; HCD (testimony of M.G.). M.G. testified, however, that the medical report had only come to his attention on the day of the hearing. HCD (testimony of M.G.).

¶8    The appellant further argues that the administrative judge erred in assessing the facts of the case because he "relied on the EN-1032s, the now discredited criminal information and vacated plea in support of [his] determination that the agency had met its burden of establishing that she 'knowingly misrepresented her business activities to OWCP so that she would continue to received [sic] unreduced benefits.'" PFR File, Tab 1 at 8 (quoting ID at 7). She argues that the administrative judge failed to consider Dr. R.'s report as evidence of her actual innocence, as well as her own uncontested testimony. PFR File, Tab 1 at 8-10. She points out that Dr. R.'s report had been in her OWCP file since March 2013, and the OWCP employees reviewing her file had not questioned it. *Id.* at 9. She also points out that no one has contested the fact that she is disabled and the criminal charge against her was dismissed with prejudice. Further, the administrative judge failed to consider her uncontested testimony that her book was copyrighted, her websites were in place, and her business losses were incurred outside of the March 2012 through June 2013 reporting period; and she received no income during the reporting period other than the church stipend. *Id.* at 10. She argues that the agency managers who stated that she had designed websites for the agency were among the persons named in her EEO complaints. *Id.* She additionally argues that the EN-1032s and tax returns were "after acquired information" and did not form the basis for her removal. *Id.*

¶9    The appellant's arguments are unavailing. First, she cannot rely upon the court's dismissal of the criminal charge as proof of innocence. When he moved for dismissal, the Assistant U.S. Attorney prosecuting her case did not concede that she was innocent. To the contrary, he explained that she had committed the acts underlying the charge, but he was unable to establish a dollar loss because

the OWCP had found that she was nevertheless disabled and qualified for full benefits during the time in question. IAF, Tab 5 at 37-41. The prosecutor pointed out that she still could be prosecuted for making false statements. The judge, however, dismissed the charge with prejudice to free her from uncertainty as to whether she might eventually face new charges. *Id.* at 39–41. Further, while the charge still stood, the prosecutor refused to let the appellant enter an *Alford* plea,[5] and instead required her to state under oath that she had committed the conduct upon which the charge was based. *Id*. at 100. Additionally, while the court vacated her plea, the appellant never repudiated her sworn stipulation to the facts underlying the plea agreement. *Id*. at 93.

¶10     Moreover, a criminal proceeding and a Board appeal are distinct processes with differing burdens of proof. Because a criminal charge requires a higher burden of proof, "[i]t is well settled that an acquittal on criminal charges does not *per se* impair the substantiality of evidence of guilt in a corresponding charge made in an appeal from a Civil Service removal for cause." *Peden v. United States*, 512 F.2d 1099, 1104 (Cl. Ct. 1975); *see Larry v. Department of Justice*, 76 M.S.P.R. 348, 355 (1997) (holding that dismissing related criminal charges did not matter for purposes of the Board appeal because the charge underlying the removal was based on the appellant's conduct and not on the merits of the criminal charges).

¶11     Furthermore, the appellant's discussion with Dr. R. regarding her outside activities did not inoculate her from liability for subsequent material omissions on the EN-1032 forms. The EN-1032 form specifically states that the information provided would be used to determine whether the claimant completing the form would be entitled to receive continued benefits and at what level. *See, e.g.*, IAF, Tab 20 at 63, 66, 68. The form warns the claimant to report employment

---

[5] An *Alford* plea is a guilty plea made as part of a plea agreement wherein the defendant does not admit actual guilt. Black's Law Dictionary 83 (9th ed. 2009).

information even if she harbors doubts as to its relevance. *Id.* at 61. Because of this warning, the appellant would have known that reporting her outside activities might jeopardize her benefits. Additionally, the extent to which she described her outside activities to Dr. R. is unclear. Dr. R.'s statement does not mention her ongoing relationship with specific churches, her web design activities, or whether she was paid for any of her outside activities. IAF, Tab 23 at 30. As for her assertion that her income-producing activities occurred outside of the 15‑month reporting period, the checks from Petworth United Methodist Church were issued beginning 12 months prior to her completing the first EN‑1032. IAF, Tab 20 at 77-88. As Chief Executive Officer of Bennella Publishing Press, Inc., the appellant entered into a contract with Lightning Source, Inc., for the printing of her book merely 3 months prior to completing the first EN‑1032. IAF, Tab 21 at 17‑19, 24‑27.

¶12        Finally, the appellant's assertion that the EN-1032s and Federal income tax returns did not form the basis for her removal, PFR File, Tab 1 at 8-10, is not borne out in the record. Her false statements on the EN-1032s formed the specific basis for the agency's action against her, and the agency was clearly in possession of information such as her Federal income tax returns when it proposed her removal. IAF, Tab 5 at 77-78, 91. The appellant's arguments asserting innocence are thus unavailing, and we affirm the administrative judge's findings.

¶13        The appellant also asserts that she established her affirmative defenses of race, sex, and disability discrimination and retaliation for prior EEO activity. PFR File, Tab 1 at 11-14. Specifically, she argues that she "adduced uncontested record evidence undermining the agency's claim that it had a legitimate non‑discriminatory basis for her termination," namely, evidence of innocence in the criminal proceeding, including a plea that was both vacated and "discredited by the averments in the . . . motion to vacate." *Id.* at 13-14. That the agency

proceeded with her removal anyway, she asserts, raises an inference that the real reasons for her termination were unlawful discrimination and retaliatory animus. *Id.* at 14.

¶14      On the issues of race and sex discrimination, the administrative judge reached the correct result, *see* ID at 7-9, but the initial decision does not reflect the Board's revised analytical framework set forth in *Savage*, 122 M.S.P.R. 612, ¶¶ 35-51. When an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e‑16, in reviewing the evidence of discrimination or retaliation, the Board, will first inquire whether she has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 612, ¶ 41. If the appellant meets her burden to show that discriminatory or retaliatory animus was a motivating factor in the contested personnel action, the burden of proof shifts to the agency to show by preponderant evidence that it would have taken the action even if it lacked such a motive. *Savage*, 122 M.S.P.R. 612, ¶¶ 48-50. If the appellant ultimately proves that the action was based on a violation of 42 U.S.C. § 2000e‑16, which in turn constitutes a prohibited personnel action under 5 U.S.C. § 2302(b)(1), the Board will order the agency to cancel the action and return the appellant to the status quo ante. *Id*., ¶ 47.

¶15      Here, the appellant relied solely on the dismissal of the criminal charge, which she characterizes as proof of actual innocence. PFR File, Tab 1 at 13. As we have explained above, the Government's motion to dismiss the charge is not an admission of her innocence. Further, the agency issued its decision letter removing the appellant on December 16, 2014, IAF, Tab 5 at 60, which was *prior to* dismissal of the criminal charge, *id.* at 34-42, thus undermining any assertion that the agency removed her despite knowledge of her "actual innocence," PFR File, Tab 1 at 13-14.

¶16    The appellant's allegations of disability discrimination were equally unavailing. The initial decision includes a detailed analysis of that issue. ID at 9-14. Assuming that the appellant established that she is a person with a disability, *see* 42 U.S.C. § 12102; 29 C.F.R. § 1630.2(g), she presented no evidence to suggest that either the proposing or deciding official considered her disability in deciding to undertake removal proceedings. She likewise presented no evidence of similarly situated coworkers, who were not disabled and who evaded disciplinary action for similar misconduct. Conversely, the agency presented a legitimate, nondiscriminatory reason for its action, which was supported by preponderant evidence including the appellant's voluntary admission of wrongdoing. IAF, Tab 5 at 93.

¶17    As for her allegation of retaliation, the appellant admitted that the proposing and deciding officials knew nothing of her EEO activity, but she alleges that other persons—including persons who reported and investigated her wrongdoing—knew of her EEO activity and were motivated by it. PFR File, Tab 1 at 14; *see Savage*, 122 M.S.P.R. 612, ¶¶ 42-43. As for the persons who reported her wrongdoing to the OIG, her suggestion that those persons may have been motivated by retaliatory animus is purely speculative. She offered no evidence regarding either the identities or motivations of the persons who approached the OIG.[6] As for the motives of the investigators, M.G. gave undisputed testimony that he was unaware that any complaint had been filed against him. HCD (testimony of M.G.).

¶18    Finally, the appellant alleges that the administrative judge improperly refused to allow one of her witnesses, K.P., who was the agency's OIG investigator in this matter, to testify. PFR File, Tab 1 at 14-15. The administrative judge found that K.P.'s proffered testimony would duplicate that of other witnesses, including M.G., the DOL investigator. IAF, Tab 25 at 9,

---

[6] The persons who reported her misconduct did so anonymously. IAF, Tab 22 at 51.

Tab 28. The appellant argues that K.P. would have testified regarding "NGA-OIG internal policies and practices relating to investigations and the rights of targeted employees . . . as well as the extent of NGA OIG's knowledge of [her] prior protected activity." PFR File, Tab 1 at 14-15. She argues that M.G. "was not competent to testify about NGA‑OIG policies and practices." *Id.* at 15.

¶19 An administrative judge has wide discretion under 5 C.F.R. § 1201.41(b)(8), (10) to exclude witnesses when it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985). The administrative judge here decided which witnesses to include and exclude based upon the information that the parties proffered. IAF, Tab 20 at 42-43, Tab 23 at 7-9. The appellant's proffer regarding K.P. stated in its entirety: "[K.P.], a current NGA OIG Investigator, was lead OIG investigator into allegations against appellant." IAF, Tab 23 at 7. The appellant's written objection to the administrative judge's prehearing conference summary was only a little more instructive:

> While both [M.G.] and [K.P.] possess relevant information on duplicative issues relating to the investigation and factual basis for underlying claim of "False Statements," appellant submits that NGA−OIG internal policies and practices relating to investigations and the rights of targeted employees are relevant to the issues in this matter, including credibility and retaliation. As an employee of DOL−OIG, [M.G.] is not competent to testify about NGA−OIG policies and practices. Accordingly, appellant submits that the testimony of [K.P.] would not be entirely duplicative to that of [M.G.].

IAF, Tab 26. Absent additional factual justification, it was not an abuse of discretion for the administrative judge to find that K.P.'s testimony would duplicate that of M.G. Further, the record shows that M.G. served as the primary investigator in this matter, and as such, his testimony would have been more relevant than that of K.P. IAF, Tab 5 at 30. The appellant's argument is thus unavailing.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court

no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.