**BRIDGEPORT HARBOUR PLACE I, LLC**

v.

**Joseph GANIM, et al.**

**No. 3:01CV2162 (AHN).**

United States District Court, D. Connecticut.

Sept. 10, 2002.

William J. Sweeney, Thomas P. Griffen, Sweeney & Griffen, New Britain, CT, R. Bartley Halloran Law Offices of R. Bartley Halloran, Farmington, CT, William F. Gallagher, Gallagher & Calistro, New Haven, CT, for Plaintiffs.

Edward F. Spinella, Reid & Riege, P.C., Hartford, CT, Michael J. Gilbert, Edward A. McDonald, New York, NY, Ira B. Grudberg, David L. Belt, Jacobs, Grudberg, Belt & Dow, New Haven, CT, for Defendants.

## RULING ON MOTIONS TO INTERVENE AND TO STAY

NEVAS, District Judge.

Several motions are presently pending before the court: 1) Government's Motion to Intervene and Stay Discovery [doc. # 44]; 2) Defendant Paul Pinto's Motion to Stay Proceedings [doc. # 73] (Motion adopted by Alfred Lenoci, Sr., Alfred Lenoci, Jr., United Properties, Leonard Grimaldi and Harbor Communications); and 3) Joseph Ganim's Motion to Maintain Current Schedule for Motion to Dismiss

[doc. # 79]. For the following reasons the Government's motion to intervene and stay discovery is GRANTED; Pinto's motion to stay the proceedings is DENIED; and Ganim's motion to maintain the current schedule for the motion to dismiss is GRANTED.

## FACTUAL BACKGROUND

In 1998, the federal government began an investigation of fraud and corruption in the City of Bridgeport. As a result, several individuals, some of whom are defendants in this case, pleaded guilty to various criminal charges. Paul Pinto, vice president of the Kasper Group, an architectural and engineering firm, pleaded guilty to a four count criminal information which included charges for racketeering in violation of 18 U.S.C. § 1962(d). Leonard Grimaldi, president of Harbor Communications, a public relations and political consulting firm, pleaded guilty to a three-count criminal information, which also included racketeering charges. Alfred Lenoci, Sr. and Alfred Lenoci, Jr., principals in United Properties, Ltd., a real estate development company, each pleaded guilty to charges of bribery in violation of 18 U.S.C. § 666(a)(2). In their pleas, these defendants acknowledged that they corruptly provided bribes, kickbacks, and other things of value to Joseph Ganim, the mayor of Bridgeport, in return for preferential treatment from Mayor Ganim in connection with the awarding of city contracts.

In October, 2001, a grand jury returned a 24 count criminal indictment against Ganim. Shortly thereafter, the plaintiff, Bridgeport Harbour Place I, LLC, filed the instant case against Ganim and the other defendants, including the four individuals who pleaded guilty to criminal charges. According to the government's papers, Alex Conroy, principal of Bridgeport Harbour Place, told the *Connecticut Post* that he decided to sue the city only after learning from the federal investigation that Ganim had allegedly engaged in a secret plot to replace his company with United Properties as the lead developer of a commercial and residential complex to be known as Bridgeport Harbour Place ("BHP") in the Steel Point section of Bridgeport.

Plaintiff's complaint alleges that the defendants bribed, accepted bribes, committed extortion and committed fraud in the development of BHP, thereby preventing plaintiff from developing and completing the project. Plaintiff also charges the City of Bridgeport with a violation of 42 U.S.C. § 1983, breach of contract, tortious interference with contractual relations, breach of the covenant of good faith and fair dealing, violations of the Connecticut Unfair Trade Practices Act and statutory theft.

The government moved to intervene for the limited purpose of seeking a stay of discovery until the related criminal action against Mayor Ganim is resolved. The criminal matter is currently pending before Judge Arterton in the United States District Court in New Haven, Connecticut. The motion to stay proceedings, filed by Pinto and adopted by a number of other defendants, argues that the entire civil action should be put on hold until the criminal matter is resolved. Ganim has also filed a motion to maintain the current schedule with respect to the motion to dismiss.

I. Government's Motion to Intervene *and for Stay of Civil Discovery*

A. *Motion to Intervene*

The Government moves for permissive intervention, pursuant to FRCP 24(b), for

the limited purpose of seeking a stay of discovery.

FRCP 24(b) gives the district court broad discretion to permit a nonparty to intervene in a private lawsuit where the that party's claims and the pending civil action share questions of law and fact and where such intervention would not "unduly delay and prejudice the adjudication of the rights of the original parties." F.R.C.P. 24(b). Courts in this circuit have frequently allowed the government to intervene in a civil case when there is a related criminal case pending, particularly when the intervention is for the limited purpose of moving to stay the case. *See Twenty First Century Corp. v. LaBianca,* 801 F.Supp. 1007, 1009 (E.D.N.Y.1992); *In re Par Pharm.,* 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment"). Though the Second Circuit has not definitively held that such intervention is always appropriate, it has noted the government's interest in obtaining the stay. *See Securities & Exch. Comm'n v. Chestman,* 861 F.2d 49, 50 (2d Cir.1988) (per curiam).

The government argues that it should be allowed to intervene because: (1) the criminal and civil actions share common questions of law and fact; and (2) the proposed intervention is timely. The government notes that the federal investigation "triggered" the civil suit and that many of the allegations in the civil complaint "appear to have been lifted verbatim from the Ganim indictment." The government contends that its request for intervention is timely because the civil case is still in its "infancy."

The court agrees that the criminal and civil actions share common questions of law and fact and that the motion to intervene is timely. The court, therefore, will grant the government's motion to intervene.

### B. *Motion for Stay of Civil Discovery*

■ A district court has the discretionary authority to stay a civil proceeding pending the outcome of a parallel criminal case when the interests of justice so require. *See United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). This authority allows a court to "stay civil proceedings, postpone civil discovery or impose protective orders and conditions when the interests of justice seem to require such action." *Securities & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (en banc).

■ In determining whether to impose a stay of discovery, the court must balance the interests of the litigants, nonparties, the public and the court itself. *See Banks v. Yokemick,* 144 F.Supp.2d 272, 275 (S.D.N.Y.2001). The factors a court should consider include: 1) the interests of the plaintiff in an expeditious resolution and the prejudice to the plaintiff in not proceeding; 2) the interests of and burdens on the defendants; 3) the convenience to the court in the management of its docket and in the efficient use of judicial resources; 4) the interests of other persons not parties to the civil litigation; and 5) the interests of the public in the pending civil and criminal actions. *See Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995); *Twenty First Century Corp.,* 801 F.Supp. at 1010.

#### 1. *Plaintiff's Interest*

The Government argues that the stay will not overly burden the plaintiffs. The criminal trial is scheduled to begin in Jan-

uary, 2003. The government is not asking the plaintiff to forego its civil claims, only to postpone them for several months. The government also argues that the stay pending resolution of the criminal matter will likely streamline discovery later in the civil case because evidence obtained in the criminal case will be available to the civil parties. Likewise, the government contends that resolution of legal and factual issues in the criminal case may be dispositive of similar claims in the civil action.

The plaintiff, however, argues that a stay of up to one year will be a "heavy burden." The plaintiff seeks $100 million in damages and notes that the delay caused by a stay of one year would cost $5–10 million dollars in interest that could accrue on the damage award.[1] Plaintiff also argues that the case here is different from *Twenty First Century*, a case relied upon heavily by the government. In that case, the stay granted by the court would have been for *approximately two months.*

While plaintiff does have a legitimate interest in "the expeditious resolution" of its case, courts frequently allow other factors, such as a party's Fifth Amendment privilege, *see I.B.2. infra*, to trump a plaintiff's interest. "This is particularly true where the subject matter of both cases overlaps to a significant degree and the criminal case is expected to be resolved by the end of the year." *Transworld Mech.*, 886 F.Supp. at 1140. Though the criminal case here will not be resolved by the end of the year, the projected completion does not seem to create inordinate delay. Also, the criminal and civil cases clearly overlap.

Courts have also noted that the resolution of the criminal case may later stream-line discovery in the civil case. *Id.; Rosenthal v. Giuliani*, No. 98 Civ. 8408(SWK), 2001 WL 121944 (S.D.N.Y. Feb. 9, 2001).

### 2. Interests of/Burden on Defendants

Courts often grant motions to stay on the grounds that the Fifth Amendment privileges of certain parties are implicated. This is a key concern to courts. *Transworld Mech.*, 886 F.Supp. at 1140 (Plaintiff's "interests ... are trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case."); *Arden Way Assocs. v. Boesky*, 660 F.Supp. 1494, 1498 (S.D.N.Y. 1987) ("Where invocation of the fifth amendment imposes undue sanctions or penalties on a defendant, a court may in its discretion stay civil proceedings, postpone civil discovery, or impose protective orders and conditions in the furtherance of the interests of justice.").

Allowing the civil case to proceed before the criminal case is resolved will force the defendants, particularly those who have pleaded guilty to the criminal charges, to make a "Hobson's Choice." If the defendants zealously litigate the civil case and provide discovery, the government may use the information to the defendants' detriment at sentencing. Significantly, the Fifth Amendment privilege applies through sentencing. If the defendants assert that privilege in the civil proceeding, they could possibly be defaulted in the case and become subject to civil liability.

### 3. Convenience to Courts

This factor does not seem to favor either party, though the government does note

---

1. The Lenocis and their related corporate entities filed a Memorandum responding to Plaintiff's argument regarding lost interest on the $100 million dollar damage claim. These defendants note that Plaintiff's argument that the stay would "create[] a severe financial penalty" on plaintiff assumes that there is a) merit to the claim and b) that any verdict for and award to plaintiff would be for the full amount demanded.

that the criminal case could resolve some of the issues in the instant case.

### 4. *Third Party Interests*

The government argues strongly that its corruption investigation and criminal action would be damaged if discovery were allowed to go forward at this time in the civil case. Many of the civil defendants are cooperating with the government. If the stay is not granted, Ganim would be able to depose Pinto, Grimaldi, and the Lenocis and would require them to disclose documents that Ganim would not otherwise be entitled to receive. *See Chestman*, 861 F.2d at 50 ("The government ha[s] a discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in [a related] criminal matter.").

Also, the government argues that if discovery were to go forward, the plaintiff would likely seek discovery from the government including FBI 302 reports of witness interviews, wiretap logs, tape recordings of intercepted conversations, etc., which contain information about the ongoing investigation. The requests would drain the prosecutorial resources of the government when they are needed to conclude the criminal matter.

Plaintiff states that it has no objection to a stay of discovery against the government, but plaintiff does object to any broader stay.

Plaintiff states that "it would needlessly prejudice the plaintiff to stay discovery against all 17 other defendants for the sake of one man's privilege."

Courts are very concerned about the differences in discovery afforded parties in a civil case and those of a defendant in a criminal case. *See Chestman*, 861 F.2d at 50; *Twenty First Century Corp.*, 801

F.Supp. at 1010 ("Allowing civil discovery to proceed ... may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules."); *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir.1962) (judges must be sensitive to the differences in the rules of discovery in civil and criminal cases).

### 5. *Public Interest*

The government argues that the public interest will be served best by staying discovery: "[T]he interests of the citizens of Bridgeport in the unhampered prosecution of an elected public official who allegedly corrupted his office for personal financial gain clearly outweighs the plaintiff's corporate interest in immediately proceeding with its lawsuit to recover monetary damages allegedly sustained a[sic] result of the criminal conduct." (Gov.'s Motion to Intervene and for Stay of Civil Discovery, p. 10.)

Plaintiff argues that the public interest will be served by allowing the case to proceed as quickly as possible. He also states that the public has a strong interest in being able "to see and hear evidence that records the activities of a member of Congress and local elected officials." *In re Application of NBC Inc.*, 635 F.2d 945, 952 (2d Cir.1980) (relating to Abscam). The court is not persuaded by this argument.

The public interest will be served best by allowing the government's case to proceed without obstacles. *See Rosenthal*, 2001 WL 121944, at *2 ("The public has an interest in ensuring the criminal discovery process is not subverted.").

■ The balance of factors weighs in favor of granting the government's request for a stay of discovery. A stay of discovery is important, *inter alia*, to protect the defendants' Fifth Amendment rights and

to avoid prejudice to the government in the related criminal case.

During oral argument, the plaintiff suggested that the more appropriate course of action would be to deny the motion to stay, allow the government to "monitor" discovery and have the court issue specific sealing and protective orders. The court is concerned, however, that such a compromise could force the government to become proactive in objecting to specific discovery requests and thereby inadvertently be forced to reveal some aspect of its case prematurely. Further, plaintiff's recommendation would likely require further judicial intervention. Under such circumstances, the court finds that a complete stay of discovery offers "a more efficient" resolution. *See Transworld Mech.*, 886 F.Supp. at 1141. The government's request for a stay of discovery pending resolution of the related criminal matter is granted.

## II. *Defendant Paul Pinto's Motion for Stay of Proceedings*

Defendant Paul Pinto argues that the entire case should be stayed pending the resolution of the criminal action for many of the same reasons offered by the government, including: 1) Pinto's Fifth Amendment privilege is implicated; 2) Ganim may gain evidence from Pinto and other cooperating witnesses to be used in the criminal trial; and 3) the stay will best serve the interests of the public and the judiciary without unduly prejudicing the plaintiff. Pinto argues, however, that the court should go beyond merely staying discovery and instead stay the entire matter pending resolution of the Ganim criminal trial because staying discovery will not suffice to protect the rights of the defendant. The court disagrees.

Pinto argues that the defendants will be put at risk not only by being subject to discovery and asserting their Fifth Amendment privilege, but also by having to answer the complaint. If the defendants must respond to the complaint, they may be forced to take positions to avoid liability that would be inconsistent with their positions and potential testimony in the criminal matter.

A stay of discovery will provide sufficient protection of the defendants' Fifth Amendment privileges and will serve best the interests of both the court and the public. There is no need to go beyond this relief and stay the entire civil matter. Thus, defendant Pinto's motion is denied.

## III. Defendant Joseph Ganim's Motion To Maintain *Current Schedule For Motion To Dismiss*

Mayor Ganim moves to maintain the current schedule for filing a motion to dismiss. He argues that the court's decision on the motions to stay should have no bearing on that schedule. The court agrees and grants Ganim's motion to maintain the current schedule with respect to the motion to dismiss.

## CONCLUSION

For the foregoing reasons, the government's Motion to Intervene and for Stay of Civil Discovery [doc. # 44] is GRANTED; Pinto's Motion to Stay Proceedings [doc. # 73] is DENIED; and Ganim's Motion To Maintain Current Schedule For Motion to Dismiss [doc. # 79] is GRANTED.