In re STATE of Minnesota, Appellant,

In re the Marriage of Christina M. Deal, Petitioner/Respondent,

v.

Ryan S. DEAL, Respondent/Respondent.

No. A07–278.

Supreme Court of Minnesota.

Nov. 1, 2007.

Matthew P. Franzese, Traverse County Attorney's Office, Alexandria, MN, for Petitioner.

Donald B. Hawkins, Legal Services of NW Minnesota, Alexandria, MN, for Respondent Christina M. Deal.

Robert V. Dalager, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Morris, MN, for Respondent Ryan S. Deal.

## OPINION

ANDERSON, PAUL H., Justice.

Ryan S. Deal is charged with criminal sexual conduct and is also a party to a marriage dissolution proceeding. He sought to use civil discovery in the dissolution proceeding to depose the alleged victim and a potential witness in the ongoing criminal proceeding. The State of Minnesota petitioned to intervene in the dissolution proceeding to stay the civil depositions for the duration of the criminal trial. The district court found that the state had no interest in the dissolution proceeding and denied the state's petition to intervene and to stay the depositions. The state then petitioned the Minnesota Court of Appeals for a writ of prohibition to prevent the district court from allowing the depositions. The court of appeals denied the writ. Because we conclude that allowing civil discovery of information relevant to Ryan Deal's pending criminal proceeding contravenes the policies behind the criminal discovery rules, we reverse.

Christina M. Deal and Ryan S. Deal, a/k/a Ryan Deal, were married on September 15, 2000, and separated in March 2006. They have one minor child together, T.D., who is now 6 years old. Christina M. Deal has three minor children from a previous relationship: B.Q., C.Q., and E.Q. All four children resided with the parties during their marriage. On August 15, 2006, the Traverse County Attorney filed charges against Ryan Deal for acts of criminal sexual conduct against B.Q., then 13 years old. Shortly thereafter, in October 2006, Christina M. Deal initiated a marriage dissolution proceeding against Ryan Deal in Traverse County. The same judge is presiding over both the dissolution proceeding and Ryan Deal's criminal proceeding.

In the dissolution proceeding, both parties are seeking custody of T.D. Ryan Deal claims that he has been the primary caretaker of T.D., and was all four children's sole caretaker when Christina M. Deal spent time in jail and substance-abuse rehabilitation facilities. Ryan Deal sought to depose B.Q., C.Q., and Christina M. Deal in the dissolution proceeding to support his claim for custody of T.D., and he obtained subpoenas to compel the attendance of all three at the depositions. Ryan Deal did not attempt to depose E.Q. because E.Q. moved out of state after the dissolution proceeding began. Ryan Deal asserts that the depositions of B.Q. and C.Q. are necessary for the resolution of the custody dispute because the children's "observations, testimony and knowledge" concerning the factors considered in custody determinations are "unique and exceptional."

Christina M. Deal filed a motion for a protective order under Minn. R. Civ. P. 26.03, requesting that the district court quash B.Q.'s and C.Q.'s subpoenas to avoid subjecting them to oppression, embarrassment, and intimidation. Christina M. Deal emphasized the importance of protecting B.Q. because of the criminal charges against Ryan Deal for sexually assaulting B.Q. Alternatively, Christina M. Deal requested that the court seal the depositions or change the discovery method to a written deposition.

At the same time, the Traverse County Attorney, on behalf of the state, petitioned to permissively intervene in the marriage dissolution proceeding under Minn. R. Civ. P. 24.02, for the limited purpose of requesting that the district court prohibit Ryan Deal from taking all three depositions. The state argued that because all three persons are potential witnesses at Ryan Deal's criminal trial, permitting the depositions in the dissolution proceeding while the criminal trial is pending would allow Ryan Deal to impermissibly circumvent the criminal discovery rules. The

district court, finding the state did not have an interest in the dissolution proceeding or "good cause" to stay civil discovery, denied the state's request to intervene and to stay the depositions. But the court issued a limited protective order precluding Ryan Deal from being present at B.Q.'s and C.Q.'s depositions.

Christina M. Deal was deposed, but the depositions of B.Q. and C.Q. were postponed pending appellate review of the district court's intervention and discovery orders. The state agreed to maintain the sequence of the dissolution and criminal proceedings until the outcome of the appeal, which would allow Ryan Deal to retain the opportunity to depose B.Q. and C.Q. in the civil proceeding before the criminal trial if the district court's orders were affirmed. The state then filed a petition for a writ of prohibition in the court of appeals to prevent the district court from allowing the children's depositions before the completion of Ryan Deal's criminal trial. The court of appeals denied the writ, concluding that the information sought by Ryan Deal in the depositions was relevant to making a fully informed custody decision as to the best interests of T.D. Additionally, the court concluded that the interests of B.Q. were adequately protected because: (1) Ryan Deal was prohibited from being present at the depositions; (2) B.Q. would be represented by counsel at the depositions; and (3) the same judge is presiding over both proceedings and so is "in an excellent position to address deposition-related objections as well as any use of deposition-related evidence in the criminal proceeding."

The state filed a petition for review, asking our court to decide whether a criminal defendant should be prevented from deposing potential criminal witnesses in a civil proceeding while a criminal trial is still pending.

## I.

The state first argues that it is never appropriate to depose a child whose custody is at issue in a marriage dissolution proceeding because information concerning the child is normally obtained through custody evaluators, an in-camera interview, and a guardian ad litem. Custody determinations are governed substantively by Minnesota Statutes chapter 518 and procedurally by the Minnesota Rules of Civil Procedure. *See* Minn.Stat. § 518.005, subd. 1 (2006). Under chapter 518, custody determinations are made based on the "best interests of the child," where the court examines all relevant factors including: the wishes of the parents and the child; the child's primary caretaker; the relationship between the child and his or her parents, siblings, and other relevant persons; the child's adjustment to home, school, and the community; the mental and physical health of the parents; and "the effect on the child of the actions of an abuser." Minn.Stat. § 518.17 (2006). Under the Minnesota Rules of Civil Procedure, parties may take depositions concerning "any matter, not privileged, that is relevant to a claim or defense of any party." Minn. R. Civ. P. 26.01–.02. In a child custody proceeding, matters concerning the child's best interests would be "relevant" to the parties' claims and defenses, and therefore proper matters for depositions. Nevertheless, the civil rules are inapplicable to chapter 518 proceedings insofar as the rules "are inconsistent or in conflict with" chapter 518. Minn. R. Civ. P. 81.01(a); Minn. R. Civ. P. app. A.

Based on the extensive discovery procedures set out in chapter 518 that detail the manner in which information can be gained from a child when that child's custody is being determined, the state's argument may have merit with regard to deposing a

child whose custody is at issue.[1] But the children sought to be deposed in this case are not the children *whose custody is at issue*. B.Q. and C.Q. are "witnesses" with information possibly relevant to determining the best interests of their half-brother, T.D. We conclude that the state's argument that it is never appropriate to depose a child whose custody is issue is not applicable to the facts of this case, and we therefore decline to address it any further.

## II.

■ We next address the state's argument that, under Minn. R. Civ. P. 24.02, it had the right to permissively intervene in the marriage dissolution proceeding for the limited purpose of requesting a stay of B.Q.'s and C.Q.'s depositions. The state argues that the depositions would jeopardize the integrity of Ryan Deal's criminal trial by intimidating and humiliating B.Q., the alleged victim, and C.Q., a potential criminal witness, and by permitting Ryan Deal to gain access to information pertinent to his criminal trial that goes beyond the scope of criminal discovery.

■ Denials of requests for permissive intervention are generally not appealable. *Norman v. Refsland*, 383 N.W.2d 673, 675 (Minn.1986). But we review such denials when, as here, they are based on a finding that the applicant "had no protectable interest in the litigation." *Thibault v.*

*Bostrom*, 270 Minn. 511, 512 n. 1, 134 N.W.2d 308, 310 n. 1 (1965) (holding that a denial of permissive intervention based on a finding that a party has no protectable interest in the litigation becomes a final appealable order as to that party). When reviewed, denial of a request to permissively intervene will be reversed only when "a clear abuse of discretion is shown." *SST, Inc. v. City of Minneapolis*, 288 N.W.2d 225, 231 (Minn.1979).

Minnesota Rule of Civil Procedure 24.02, the rule governing permissive intervention, states in part:

> Upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a common question of law or fact. * * * In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

We have said that "[i]t is our policy to encourage intervention wherever possible." *Norman*, 383 N.W.2d at 678. In *State v. Rud*, we recognized the strong public policy against allowing a criminal defendant to circumvent the limited scope of discovery in the criminal rules. 359 N.W.2d 573, 578 (Minn.1984). As discussed below, this policy may require staying discovery in a civil proceeding to prevent a defendant in a related criminal proceeding from bypass-

---

1. While chapter 518 does not expressly prohibit a party from deposing a child in a custody proceeding, it provides extensive procedures for determining the best interests of the child whose custody is at issue. *See* Minn. Stat. § 518.166 (2006) (permitting the court to "interview the child in chambers to ascertain the child's reasonable preference as to custodian"); Minn.Stat. § 518.165, subd. 2a (2006) (providing for the appointment of a guardian ad litem who is responsible for conducting an independent investigation of the child, advocating for the child's best interests, and presenting written reports that include

conclusions and recommendations for the child); Minn.Stat. § 518.167 (2006) (providing that the court may order an investigation and report from the county or court services, which must be made available to the parties and may be received into evidence at the hearing). The only direct questioning of a child whose custody is at issue appears to be at a discretionary in-camera interview by the court to determine the child's custodial preference. *See* Minn.Stat. § 518.166. If such an interview is conducted, the court *must* allow the parties' counsel to be present and to ask the child "reasonable questions." *Id.*

ing the limits on criminal discovery through the use of civil discovery. *See Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962). Moreover, in a civil proceeding there often is no party to assert the public's interest in preventing the circumvention of the criminal discovery rules. As such, there appears to be a strong argument that the state should be permitted to intervene in a civil proceeding· in order to assert the public's interest in a pending criminal proceeding.

 A conclusion that intervention should be permitted is supported by federal law. *See DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (stating that we look to federal law for guidance when interpreting our own rules, particularly when the language in the federal and state rules is identical).[2] When a civil proceeding and a criminal proceeding involve overlapping evidentiary material, federal courts have consistently held that the "government [has] a discernible interest in intervening [in the civil proceeding] in order to prevent discovery in the civil [proceeding] from being used to circumvent the more limited scope of discovery in the criminal matter."[3] *SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir.1988) (per curiam). This interest in preventing a defendant from bypassing the limits on criminal discovery should be given "substantial weight" when ruling on a petition to intervene. *Campbell,* 307 F.2d at 487. Further, permitting intervention in a civil proceeding is particularly appropriate when the state wants to do so "for the limited purpose of moving to stay the case" during the pendency of the criminal trial. *Bridgeport Harbour Place I, LLC v. Ganim,* 269 F.Supp.2d 6, 8 (D.Conn.2002). Even in circumstances where courts have found the connection between the civil and criminal proceedings to be too weak to merit granting the state's request to stay civil discovery, the state's interest has still been deemed strong enough to merit granting the request to permissively intervene. *See United States v. Banco Cafetero Int'l,* 107 F.R.D. 361, 365 (S.D.N.Y.1985).

We agree with the rationale in the federal cases concerning the state's interest in intervening in a civil proceeding when a pending criminal proceeding involves overlapping evidentiary material. In order to protect the integrity of the criminal proceeding, the state must be given standing in the civil proceeding to assert that interest on behalf of the public. In this case, the district court denied the state's request to intervene based in part on a finding that "there is no common question of law or fact relating to [the state's] role as prosecutor in the criminal case and the issue of custody in the dissolution case." But, based on *Rud* and the federal reasoning we now adopt, we conclude that the state does have an interest in the civil proceeding, and this interest should be given "substantial weight."

The district court also found that allowing the state to intervene "would tend to delay or prejudice the adjudication of custody in the (albeit unlikely) event that the dissolution is adjudicated prior to the criminal trial." Undue delay or prejudice is a

---

2. The federal rule and Minnesota's rule for permissive intervention are nearly identical, except that the federal rule has an additional ground for intervention "when a statute of the United States confers a conditional right to intervene." Fed.R.Civ.P. 24(b); *see* Minn. R. Civ. P. 24.02.

3. *See Pfizer Ireland Pharms. v. Albers Med., Inc.,* 225 F.R.D. 591, 592 (W.D.Mo.2004); *Bridgeport Harbour Place I, LLC v. Ganim,* 269 F.Supp.2d 6, 10 (D.Conn.2002); *United States v. Banco Cafetero Int'l,* 107 F.R.D. 361, 364 (S.D.N.Y.1985); *SEC v. United States Realty & Improvement,* 310 U.S. 434, 458–60, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

proper ground to deny permissive intervention. Minn. R. Civ. P. 24.02. But because the court did not consider the state's interest in the civil proceeding, the court could not accurately assess the weight of the possible harm from denying intervention against the possible delay or prejudice from granting the intervention.

Based on the record before us, we conclude that the state should have been allowed to permissively intervene in the marriage dissolution proceeding for the limited purpose of requesting a protective order staying B.Q.'s and C.Q.'s depositions. The state's interest in protecting the integrity of the criminal proceeding is particularly weighty when compared to the possible prejudice the stay could cause in the dissolution proceeding. First, the district court admitted it was "unlikely" that the civil trial would occur before the criminal trial, thus minimizing the possibility of any prejudice to Ryan Deal or the dissolution proceeding. Second, the intervention request was for the limited purpose of requesting the discovery stay; therefore, the state would not be interfering in the remainder of the dissolution proceeding. Third, as discussed above, custody determinations are made largely through investigations by the court, the county, and the guardian ad litem, which could continue without delay despite the intervention. Based on the policy underlying limited criminal discovery, the state's interests in protecting that policy, and the limited prejudice that would result from intervention, we conclude that the state's substantial interests weigh heavily in favor of granting its request to permissively intervene in the dissolution case. We therefore hold that the district court abused its discretion by denying the state's request to permissively intervene in the civil dissolution proceeding for the limited purpose of requesting a stay of the civil depositions during the pendency of Ryan Deal's criminal trial.[4]

## III.

We now turn to the state's argument that the district court erred when it denied the state's request to stay the civil depositions of B.Q. and C.Q. during Ryan Deal's criminal trial. A district court's denial of a motion to stay discovery will not be reversed unless the court "abused its discretion, exercised its discretion in an arbitrary or capricious manner, or based its ruling on an erroneous view of the law." *Montgomery Ward & Co., Inc. v. County of Hennepin*, 450 N.W.2d 299, 306 (Minn. 1990); *see also Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn.1986) (holding that

---

**4.** The state did not petition to intervene as of right in the dissolution proceeding under Minn. R. Civ. P. 24.01. There is a four-part test for intervention as of right. *Minneapolis Star Tribune Co. v. Schumacher*, 392 N.W.2d 197, 207 (Minn.1986) (articulating the requirements for intervention as of right under Minn. R. Civ. P. 24.01). Because the state did not argue that it had the right to intervene in the dissolution proceeding, we are not addressing this issue. Nevertheless, we note that there is federal and state case law that supports the state's right to intervene in similar cases. *See Schumacher*, 392 N.W.2d at 207; *see also SEC v. Nacchio*, No. Civ. A05CV00480MSKCBS, 2005 WL 1799372, at *3 (D.Colo. July 28, 2005); *SEC v. Mutuals.com, Inc.*, No. Civ.A.3:03–CV–2912–D, 2004 WL 1629929, at *2 (N.D.Tex. July 20, 2004) (holding that it was unnecessary to address permissive intervention because the government could intervene as of right).

We also note that holding that a third party may intervene permissively or as of right in a civil action to request a stay of civil discovery during a criminal trial that involves the same evidentiary material does *not* automatically mean that granting a stay of civil discovery is warranted in a particular case. The criteria for intervention and for a protective order staying discovery are distinct and should be kept as such. *Compare* Minn. R. Civ. P. 24.01–.02 *with* Minn. R. Civ. P. 26.03.

a reversal based on abuse of discretion requires "a clearly erroneous conclusion that is against logic and the facts on record"). In a civil proceeding, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party." Minn. R. Civ. P. 26.02. But the court has broad discretion to fashion orders for "good cause" to protect the parties or witnesses from "annoyance, embarrassment, oppression or undue burden or expense" in the discovery process. Minn. R. Civ. P. 26.03; *see also Baskerville v. Baskerville*, 246 Minn. 496, 506, 75 N.W.2d 762, 769 (1956). Nevertheless, "we have consistently construed the discovery rules in favor of broad discovery." *Larson v. Indep. Sch. Dist. No. 314*, 305 Minn. 358, 363, 233 N.W.2d 744, 747 (1975). As a result, "any limitation on the scope of discovery engrafted on discovery procedures by *interpretation* must rest on sound policy grounds." *Anderson v. Florence*, 288 Minn. 351, 357, 181 N.W.2d 873, 877 (1970) (emphasis added).

*Limited discovery in criminal proceedings*

 In contrast to the civil rules, the criminal rules allow only limited discovery, with a handful of provisions meant "to give the defendant and prosecution as complete discovery as is possible under constitutional limitations." Minn. R.Crim. P. 9, cmt.[5] Unlike a party in a civil proceeding, a criminal defendant is not allowed to take depositions for the purpose of gathering information. *State v. Mussehl*, 408 N.W.2d

844, 846 (Minn.1987). Depositions are permitted in a criminal case "only upon a showing of reasonable probability that the witness will be unavailable—*i.e.*, the rule allows depositions not for discovery purposes but to preserve testimony." *Rud*, 359 N.W.2d at 578 n. 1; *see also* Minn. R.Crim. P. 21.01. The purpose behind this limiting rule is to prevent harassment of state's witnesses and law enforcement officers, to reduce delays in the criminal process, and to avoid the possible "chilling effect on the willingness of witnesses to come forward." 8 Henry W. McCarr & Jack S. Nordby, Minnesota Practice—Criminal Law and Procedure § 16.18 (3d ed. 2001).

We have also stated that a criminal defendant should not be permitted to circumvent the limited scope of discovery in the criminal proceeding by attempting to use civil-like investigatory tools. *Rud*, 359 N.W.2d at 578. In *Rud*, a defendant who was charged with criminal sexual conduct attempted to call the child victim to testify at the probable cause hearing. *Id.* at 575. We held that calling the child to testify was not permitted, as the probable cause hearing "should not be used as a substitute for disclosure and discovery." *Id.* at 578. We went on to state that " 'the legitimate concern of the defendant to know the case against him before trial should be dealt with by other means.' " *Id.* (quoting *State v. Florence*, 306 Minn. 442, 450, 239 N.W.2d 892, 898 (1976)). These "other means" are the limited discovery methods provided for in the criminal rules, which we emphasized do not provide for discov-

---

**5.** The comment to Minn. R.Crim. P. 9, which is the general discovery rule for criminal proceedings, states:

 Rule 9, with Rules 7.01, 19.04, subd. 6(1) (Rasmussen notice of evidence obtained from the defendant and of identification procedures), Rules 7.02, 19.04, subd. 6(2) (Spreigl notice of additional offenses to

be offered at trial), and Rule 18.05, subds. 1 and 2 (recorded testimony of grand jury witnesses), provide a comprehensive method of discovery by the prosecution (Rule 9.01) and defendant (Rule 9.02). The rules are intended to give the defendant and prosecution as complete discovery as is possible under constitutional limitations.

ery depositions. *Id.* at n. 1; *Mussehl,* 408 N.W.2d at 846.

While we have stated our policy against allowing criminal defendants to bypass criminal rules that limit the discovery methods available to them, we have not yet addressed the implications of this policy on civil discovery when pending civil and criminal proceedings involve overlapping evidentiary material. That is the question presented here. Therefore, we must now determine the application of our limitation on criminal discovery to a criminal defendant's use of *civil* discovery when the defendant's pending civil and criminal proceedings involve overlapping evidentiary material.

*The effect of a pending criminal trial on related civil discovery*

Because we have not yet determined the applicability of the policy set forth in *Rud* to a civil proceeding that is related to a pending criminal proceeding, we look to federal case law for guidance, particularly because our rules on staying civil discovery "mirror" the federal rules.[6] *Rud,* 359 N.W.2d at 578 n. 1; *see DLH,* 566 N.W.2d at 69 (stating that the federal rules are instructive on interpreting the Minnesota rules, especially when "the relevant language of the state and federal rules is identical"). Federal courts have consistently held that there is "good cause" to issue a protective order staying civil discovery when a related criminal proceeding is pending in order to prevent the defendant's use of broad civil discovery to sidestep the much more limited discovery available in the criminal proceeding. *See e.g., Peden v. United States,* 206 Ct.Cl. 329, 512 F.2d 1099, 1103 (1975) ("[I]t has long been a practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way."). The reasoning supporting such a stay is based on the distinctly different policies and objectives that support the civil and criminal rules. *Campbell,* 307 F.2d at 487. While broad discovery is encouraged in civil proceedings, the federal courts identify three policy considerations "peculiar to criminal law" that justify the narrow scope of discovery in criminal proceedings:

> First, there has been a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence. Second, it is supposed that revealing the identity of confidential government informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government. Finally, it is argued that since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain the opportunity to surprise the prosecution whereas the state would be unable to obtain additional facts. This procedural advantage over the prosecution is thought to be undesirable in light of the defendant's existing advantages. The validity of each of these objections must be appraised in each of the situations in which the defendant may seek discovery and must be weighed against the importance to the defendant of the disclosure.

---

6. The discovery provisions found in Minn. R. Civ. P. 26 are adapted from Fed.R.Civ.P. 26, and "the authorities construing the federal rule should be given *full weight* to the extent applicable." Minn. R. Civ. P. 26 advisory comm. cmt.—2000 amendments (emphasis added). The criminal rules are also modeled after the federal rules, and, specifically, Minn. R.Crim. P. 21.01, governing the limited taking of depositions in a criminal trial, is "adapted from" Fed.R.Crim.P. 15., *see* Minn. R.Crim. P. 21, cmt., and "mirror[s]" the federal rule, *Rud,* 359 N.W.2d at 578 n. 1.

*Id.* (quoting *Developments in the Law— Discovery,* 74 Harv. L.Rev. 940, 1052 (1961)).

■ Because of the policies behind the narrower scope of criminal discovery, federal courts have held that "[a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for the use in his criminal trial." [7] *Bd. of Governors of Fed. Reserve Sys. v. Pharaon,* 140 F.R.D. 634, 639 (S.D.N.Y.1991); *see also Afro–Lecon, Inc. v. United States,* 820 F.2d 1198, 1203 (Fed. Cir.1987) (concluding that the opportunity to use civil discovery may present "an irresistible temptation to use that discovery to one's advantage in the criminal case"). To prevent the circumvention of the criminal discovery rules through a civil proceeding, "[j]udicial discretion and procedural flexibility should be utilized to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Pharaon,* 140 F.R.D. at 639. One federal court has held that a failure to recognize the effect of a pending criminal proceeding on the civil proceeding is a "fatal defect" in a district court's holding.[8] *Campbell,* 307 F.2d at 483.

Our review of federal case law requiring courts to consider the effect of a criminal trial on discovery in a pending civil proceeding when the matters share overlapping evidentiary material leads us to the conclusion that the rationale behind the federal law is consistent with our holding in *Rud* and the policies behind our criminal discovery rules. Prohibiting a defendant from taking a discovery deposition in a criminal proceeding, only to allow him to take the same investigatory deposition through a related civil proceeding, would contravene the aforementioned policies behind the criminal discovery rules. Maintaining the integrity of a criminal proceeding by preventing circumvention of the criminal.discovery rules is a "sound policy ground[ ]" that justifies narrowing the generally broad civil discovery rules. *See Anderson,* 288 Minn. at 357, 181 N.W.2d at 877. This policy can provide "good cause" to issue a protective order staying civil discovery. Minn. R. Civ. P. 26.03. As a result, we conclude that a court must consider the possible damaging effect of allow-

---

7. As stated by one court:

 There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. But these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal ac-

 tions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

 *Campbell,* 307 F.2d at 487.

8. Some courts have gone so far as to stay the entire civil proceeding instead of just discovery, concluding that " 'deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material.' " *Afro– Lecon,* 820 F.2d at 1204 (quoting *Peden,* 512 F.2d at 1103).

ing civil discovery when such discovery includes information relevant to a pending criminal proceeding. Further, a court's failure to consider this issue may be considered a "fatal defect" in the court's ruling.

*Balancing test to be applied when determining whether a civil discovery stay is appropriate pending the resolution of a related criminal trial*

To determine whether a stay is appropriate in a particular case, we conclude that a district court should balance the interests of "litigants, nonparties, the public, and the court itself." *Ganim*, 269 F.Supp.2d at 8. We also conclude that "[b]alancing these interests is a *situation-specific* task, and an inquiring court must take a careful look at the idiosyncratic circumstances of the case before it." *Microfinancial, Inc. v. Premier Holidays Int'l., Inc.*, 385 F.3d 72, 78 (1st Cir.2004) (emphasis added). When making its determinations, a court should consider factors such as: (1) the extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding (4) the interests of persons that are not parties to the litigation; (5) court convenience; and (6) the public interest in the pending civil and criminal actions. *Id.*; *Maloney v. Gordon*, 328 F.Supp.2d 508, 511 (D.Del.2004); *Ganim*, 269 F.Supp.2d at 8.

We emphasize the strong government and public interest in the integrity of a criminal proceeding that must be part of this balancing test—integrity that may be compromised by a defendant's access to the broad scope of civil discovery. *See Campbell*, 307 F.2d at 487; *Maloney*, 328 F.Supp.2d at 513. The more the issues overlap in the civil and criminal proceed-

ings, the more likely that allowing civil discovery will jeopardize the integrity of the criminal proceeding. *See Afro–Lecon*, 820 F.2d at 1202–3; *see also Maloney*, 328 F.Supp.2d at 511. Further, because court convenience deserves "substantial weight," *Microfinancial*, 385 F.3d at 78, "[t]he potential dispositive or clarifying effect of the resolution of [the] criminal case" on the civil proceeding also may weigh in favor of a stay. Audrey Stramos, *Parallel Proceedings in Securities Enforcement: Procedural and Constitutional Issues*, 741 PLT/Corp 239, 246 (1991) (citing Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)). Finally, the length of time of the stay is a factor in considering the prejudice to the party opposing the stay. Risk of prejudice is lessened after the criminal indictment because of the requirement of a speedy trial, which limits the duration of the stay. Pollack, *supra* at 203. A court should be flexible when a stay of civil discovery is requested under these circumstances, and should use its discretion to protect the strong public interest in the integrity of the criminal proceedings while also examining the possible countervailing interests that may be present in both the civil and criminal proceedings.

*Did the district court err by failing to apply the balancing test when determining whether to stay civil discovery?*

In this case, the district court found that there was no common question of law or fact relating to the state's role as prosecutor in the criminal proceeding and the marriage dissolution. Further, the court concluded that Ryan Deal's potential motivation to use the civil depositions to access information beyond the scope of criminal discovery was not good cause to stay the depositions. But the court made its findings without the benefit and guidance of

this opinion and therefore did not consider the various interests that should be balanced when determining whether a stay should be granted. We therefore conclude that the district court erred when it did not apply a balancing test to determine whether to stay the depositions of B.Q. and C.Q.

*Application of the balancing test to the facts of this case*

Having concluded that the district court erred by not applying a balancing test when determining whether a discovery stay was appropriate, we now consider whether, by applying the balancing test, as set forth above, to the facts of this case, the record favors a stay of B.Q.'s and C.Q.'s depositions. At the outset, the policy interest in protecting the integrity of the criminal proceeding is particularly strong in this case for numerous reasons. First, Ryan Deal appears to admit that he intends to use the civil discovery depositions to gain information relevant to his criminal trial.[9] Second, a determination of whether Ryan Deal sexually assaulted B.Q. is relevant to what custody award is in the best interests of T.D.[10] The clarifying effect of Ryan Deal's criminal case on the custody proceeding therefore weighs in favor of a stay, especially because a conviction may well have a *dispositive* effect.

Additionally, because B.Q. is a minor and an alleged victim of sexual assault by Ryan Deal, the risk of intimidating or harassing her is particularly high.[11] Both the state and the public have an interest in preventing such harassment and intimidation.[12] Even if Ryan Deal is not present during the deposition, questioning B.Q. about the abuse—and any other topics that may lead to discoverable evidence—could place B.Q. in severe distress.[13] B.Q.'s possible distress also places the criminal trial in jeopardy because "[i]n the investigation and prosecution of most sexual assault cases, the role of the victim is much more important than in other crimes since the

9. Ryan Deal states that the motion to stay discovery was requested with the "intent and purpose of precluding [Ryan Deal] the opportunity to hear the allegations and testimony of [Christina Deal's] minor child under oath, in open Court, subject to cross examination, *in advance* of the criminal jury trial, so that the Traverse County Attorney can conduct the trial by 'surprise'. If the dissolution trial is postponed, I will be unable to have the benefit of what is otherwise *my right* granted by this dissolution court, that is to take the testimony of [Christina Deal's] minor daughter/alleged victim *before the criminal trial is held*" (emphasis added). Ryan Deal also made clear to the court that he intended to question both children about the alleged sexual abuse.

10. One factor in the best interests analysis used to determine child custody is "the effect on the child of the actions of an abuser." Minn.Stat. § 518.17 (2006).

11. Child victims of sexual abuse suffer from a range of psychological problems that include "depression, anxiety, guilt, fear, sexual dys-function, withdrawal, and acting out." American Psychological Association, *Understanding Child Sexual Abuse: Education, Prevention, and Recovery*, http://www.apa.org/releases/sexabuse/effects.html; Veronica Serrato, note, *Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses*, 68 B.U. L.Rev. 155, 159 (1988).

12. This court has made clear that the state has a "compelling interest" in " 'safeguarding the physical and psychological well-being of a minor [victim of a sex crime].' " *State v. McRae*, 494 N.W.2d 252, 258 (Minn.1992) (quoting *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 607–08, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)).

13. "Whereas most crime victims find it difficult to discuss their victimization, sexual assault victims find it especially painful." First Response to Victims of Crime, Department of Justice, (2001), http://www.ojp.gov/ovc/publications/infores/firstrep/2001/vicsexaslt.html (hereinafter First Response).

victim is usually the sole witness to the crime." First Response, *supra* note 13.

We conclude that the risk of compromising the testimony of B.Q. is substantial. A child victim of abuse is often reluctant to testify against the family member who abused her; "she may be unable to give consistent, spontaneous, and detailed reports of her sexual abuse"; she is often frightened, anxious, and ambivalent about testifying against the once trusted adult who abused her; and she is particularly vulnerable during cross-examination. Serrato, *supra* note 11, at 159. Because B.Q.'s testimony will likely be crucial in Ryan Deal's criminal trial, and because victims like B.Q. are often fragile and frequently have trouble testifying at trial, special care should be taken to ensure that any existing difficulties are not compounded by subjecting victims like B.Q. to a civil deposition before the criminal trial.

We also note that while C.Q. is not an alleged victim, the state's other interests weigh in favor of staying his deposition. The chance of jeopardizing the criminal trial by allowing C.Q.'s deposition remains high because C.Q. lived in the home with B.Q. where the alleged criminal sexual conduct was said to have occurred; thus, C.Q. likely has information relevant to the criminal charges against Ryan Deal. We also note that Ryan Deal asserts that he was the caretaker of all four children when Christina M. Deal was incarcerated or in rehabilitative facilities. The criminal charges allege that some of the incidents of criminal sexual conduct occurred when Christina M. Deal was out of the home due to incarceration or rehabilitation. Therefore, the overlap of the relevant time periods between the civil and criminal proceedings makes C.Q.'s testimony concerning Ryan Deal's caretaking likely relevant to the criminal proceeding.

Despite the strong interests of the state, the public, B.Q., C.Q., and the court that weigh in favor of a stay, there is also a strong interest in promptly determining what custody will serve the best interests of T.D. We recognize that both B.Q. and C.Q. may have information that is relevant to accurately determining what custody award will serve T.D.'s best interests. While we give substantial weight to the need for custody determinations to be prompt and accurate, numerous factors in this case mitigate the potential harm from staying the discovery depositions. Ryan Deal's criminal trial is set in the near future so the stay would be limited in duration, thus minimizing the chance of harm to T.D. or prejudice to Ryan Deal. Also, as discussed above, all other investigations in the custody proceedings—by the court, the county, and the guardian ad litem—could continue during the stay and provide the information that is needed for the court to conduct the best interests analysis. A temporary custody order is also an option during the pendency of the dissolution proceeding and can be modified during the proceedings, Minn.Stat. § 518.131 (2006), so the parties can petition the court for temporary custody or visitation of T.D. pending the final disposition of the dissolution proceeding.

Having balanced the various interests outlined above, particularly the strong policy of preventing circumvention of the criminal discovery rules, we conclude that the integrity of Ryan Deal's criminal proceeding would be jeopardized if the depositions of B.Q. and C.Q. were permitted to occur before the completion of Deal's upcoming criminal trial. Here, the potential harm to Ryan Deal and T.D. is limited but the prejudice to the integrity of the criminal proceeding is considerable. Therefore, we conclude that application of the balancing test weighs heavily in favor of a stay until the completion of the criminal trial.

Accordingly, we hold that the district court abused its discretion when it denied the state's request to stay the depositions of B.Q. and C.Q.

## IV.

We have held that the district court erred when it denied that state's petition to intervene in the dissolution action for the limited purpose of requesting a stay of the depositions during the pendency of Ryan Deal's criminal trial. We have also held that the district court abused its discretion when it failed to apply the balancing test to determine whether a stay was appropriate in this case. Finally, we held that because the balancing test weighs heavily in favor of staying the depositions of B.Q. and C.Q., the district court abused its discretion when it denied the state's request to stay the depositions during the pendency of Ryan Deal's criminal trial. We must now determine whether issuing a writ of prohibition is an appropriate remedy for the district court's error in denying the state's request to stay the depositions of B.Q. and C.Q. When determining whether to grant a writ, we must adhere to the law governing the subject of the writ. *In re Giblin*, 304 Minn. 510, 516 n. 3, 232 N.W.2d 214, 218 n. 3 (1975). Denials of requests to stay discovery are reviewed under an abuse of discretion standard. *Montgomery Ward*, 450 N.W.2d at 305–06.

A writ of prohibition is an extraordinary remedy that may be issued if: (1) an inferior court or tribunal [is] about to exercise judicial or quasi-judicial power; (2) the exercise of such power [is] unauthorized by law; and (3) the exercise of such power [will] result in injury for which there is no adequate remedy.

*Schumacher*, 392 N.W.2d at 208 (citations omitted). A writ is a preventative, not a corrective, measure, and if normal appeal procedures could rectify any errors, a writ is generally not appropriate. *Giblin*, 232 N.W.2d at 218 n. 4. We have issued writs for numerous reasons, including: (1) when, as the court of appeals recognized, "the court has ordered the production of information clearly not discoverable and there is no adequate remedy at law;" (2) "to prevent abuse of discretion where there is no other adequate remedy at law[;]" (3) when "[the writ] will settle a rule of practice affecting all litigants," *Wasmund v. Nunamaker*, 277 Minn. 52, 55, 151 N.W.2d 577, 579 (1967); and (4) "to correct an error of law in the lower court where no other adequate remedy is available to the petitioner and enforcement of the trial court's order would do irreparable harm," *State v. Turner*, 550 N.W.2d 622, 626 (Minn.1996).

In *Schumacher*, we held that when the district court denied an intervening media member's request to quash the district court's order sealing files in a wrongful death action, the intervener properly challenged the pre-trial order by seeking a writ of prohibition from the court of appeals. 392 N.W.2d at 207. Holding that the district court erred when it sealed the wrongful death files, we granted the writ because we concluded that "time is of the essence" in most cases involving access to court files, making an appeal an inadequate remedy and the issuance of a writ necessary to prevent irreparable harm to the intervener. *Id.* at 208. Here, we previously concluded that the state should have been permitted to intervene in the dissolution proceeding. Hence, as in *Schumacher*, a writ was properly sought by the state to challenge the district court's pre-trial discovery order denying the state's request to stay the depositions. Further, absent a stay of the civil depositions before Ryan Deal's criminal trial, an

appeal would provide no remedy to the state because the harm—allowing Ryan Deal to compromise the integrity of the criminal trial by going beyond the scope of criminal discovery—would already have occurred. We therefore conclude that, like in cases involving access to court files, "time is of the essence" when the state requests to stay discovery in a civil proceeding that involves overlapping evidentiary material with a pending criminal proceeding. Further, a district court's erroneous ruling on the state's request to stay discovery may do irreparable harm to the state and the criminal trial if the ruling is left to be reviewed through normal appellate procedures.

Because we hold that the district court abused its discretion when it did not apply a balancing test before denying the state's request to stay civil discovery, and because we conclude that the state has no adequate remedy at law, we hold that the court of appeals erred when it denied the state's request for a writ of prohibition. Therefore, we grant the state's request for a writ preventing the district court from allowing Ryan Deal to depose B.Q. and C.Q. during the pendency of Ryan Deal's criminal trial.

Reversed.