# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Public Warehousing Company, K.S.C. ) ASBCA No. 58088
)
Under Contract No. SPM300-05-D-3128 )

APPEARANCES FOR THE APPELLANT: Michael R. Charness, Esq.
Bryan T. Bunting, Esq.
Elizabeth Krabill McIntyre, Esq.
  Vinson & Elkins LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT: Daniel K. Poling, Esq.
  DLA Chief Trial Attorney
John F. Basiak, Jr., Esq.
Keith J. Feigenbaum, Esq.
Kari L. Scheck, Esq.
  DLA Troop Support
  Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE O'CONNELL
## ON THE GOVERNMENT'S MOTION TO DISMISS

The government moves to dismiss this appeal without prejudice pending the resolution of a criminal case against appellant in the Northern District of Georgia. In the alternative, the government requests a stay. We deny the motion to dismiss but grant the motion to stay.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The "prime vendor" contract at issue in this appeal, as well as 2 earlier prime vendor contracts awarded to appellant, have thus far been the subject of at least 11 panel decisions by the Board.[1] In this opinion, we will describe only those facts necessary for the pending motion.

---

[1] *Pub. Warehousing Co.*, ASBCA No. 56116, 08-1 BCA ¶ 33,787 (*PWC I*)
*Pub. Warehousing Co.*, ASBCA No. 56116, 09-1 BCA ¶ 34,038 (*PWC II*)
*Pub. Warehousing Co.*, ASBCA No. 56116, 09-2 BCA ¶ 34,264 (*PWC III*)
*Pub. Warehousing Co.*, ASBCA No. 56888, 09-2 BCA ¶ 34,265 (*PWC IV*)
*Pub. Warehousing Co.*, ASBCA No. 56022, 13 BCA ¶ 35,201 (*PWC V*)
*Pub. Warehousing Co.*, ASBCA No. 57510, 13 BCA ¶ 35,314 (*PWC VI*)
*Pub. Warehousing Co.*, ASBCA No. 58078, 13 BCA ¶ 35,460 (*PWC VII*)

2. In July 2005, the Defense Logistics Agency (DLA) awarded Public Warehousing Company, K.S.C. (PWC) Contract No. SPM300-05-D-3128 (the PVII contract) to deliver food, beverages and related items to military units and other authorized customers in Iraq (compl. ¶ 6; gov't mot. at 2).

3. PWC transported the food and other items on trucks that traveled in convoys. It contends that in December 2007 U.S. military personnel began requiring it to provide extra semi-truck tractors (bobtails) not required by the contract; the bobtails were used to recover appellant's assets as well as the assets of other contractors in the convoys when they experienced breakdowns or other problems during the trips. (Compl. ¶¶ 12, 16-17) Appellant contends that it had no choice but to comply because the government would not have allowed its trucks in the convoys (*id.* ¶¶ 17-18).

4. On 24 October 2011, PWC submitted a certified claim to the contracting officer seeking about $7.5 million (R4, tab 44). The contracting officer did not issue a final decision and on 20 April 2012 PWC filed this appeal based on a deemed denial.

5. On 8 November 2016, we granted the government leave to amend its answer to plead affirmative defenses of fraud in the inducement, first material breach, sovereign acts doctrine, political question doctrine, assumption of risk, and failure to mitigate. *PWC*, ASBCA No. 58088 (*PWC XI*).

6. Seven years earlier, November 2009, a grand jury in the Northern District of Georgia issued an indictment against PWC for various fraud offenses arising from the contract at issue. That case is still pending.

7. The superseding indictment in that case charges PWC with major fraud against the United States, wire fraud, and conspiracy to commit major fraud. The government's theories include allegations that PWC misrepresented the expected prices of a market basket of goods in submitting its proposal for the contract and that it overcharged the government in a variety of ways, including: the use of costlier vendors that provided PWC a prompt payment discount; improperly charging the government for warehousing and distribution costs; inflating prices from distributors and vendors; improperly retaining rebates, allowances and discounts; and reducing the pack size of products to increase distribution fees. (Gov't mot. at 6-7; app. opp'n at 6-7)

---

*Pub. Warehousing Co.*, ASBCA No. 58078, 14-1 BCA ¶ 35,574 (*PWC VIII*)
*Pub. Warehousing Co.*, ASBCA No. 56022, 15-1 BCA ¶ 36,062 (*PWC IX*)
*Pub. Warehousing Co.*, ASBCA No. 59020, 16-1 BCA ¶ 36,366 (*PWC X*)
*Pub. Warehousing Co.*, ASBCA No. 58088, slip op. (8 Nov. 2016) (*PWC XI*)

## DECISION

The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings but a tribunal has the discretion to stay the civil proceeding, postpone civil discovery, or impose protective orders and conditions. *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1202 (Fed. Cir. 1987). The decision to stay a proceeding is made on a case-by-case basis, using a flexible approach that balances the parties' interests. *Id.*

The parties are in general agreement with respect to the factors that we consider in determining whether this appeal should be dismissed or stayed based upon potential interference with criminal proceedings (gov't mot. at 9; app. opp'n at 13-14).

> These factors include: (1) whether the facts, issues, and witnesses in both proceedings are substantially similar; (2) whether the on-going investigations would be compromised in going forward with the case; (3) whether the proposed stay could harm the non-moving party; and (4) whether the duration of the requested stay is reasonable.

*PWC*, ASBCA No. 56116, 08-1 BCA ¶ 33,787 at 167,227 (*PWC I*) (citing, *inter alia, Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).

A review of the precedent of the Court of Appeals for the Federal Circuit, and its predecessor court, the Court of Claims,[2] indicates that our reviewing court has generally been amenable to requests for a stay when there is a parallel criminal matter. A brief review of precedent, starting with the Supreme Court's decision in *Landis*, will be helpful in considering this motion.

As we observed above, *Landis* has informed the standard that we apply. However, it is important to consider *Landis* in its proper context because the Supreme Court's decision arose from a much different set of facts than we have in this appeal. Specifically, the core issue was whether the Public Utility Holding Company Act of 1935 was constitutional. *Landis*, 299 U.S. at 249. At one time the government faced 47 lawsuits in 13 districts on this issue. *Id.* at 252. The question before the Court was whether the plaintiffs in one case could be forced to stand aside, through a judicially imposed stay, while another district court resolved a similar case involving other

---

[2] In *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982), the Federal Circuit adopted as precedent the decisions of the Court of Claims issued before the close of business on 30 September 1982. Decisions of the Court of Claims are, therefore, binding on the Board.

3

companies. *Id.* at 249-55. Thus, there were no pending criminal actions against the respondents that the Court had to factor into its analysis.

Notwithstanding this distinction, the Supreme Court made several important statements in *Landis*. The Court explained that a tribunal has the inherent power to control its docket by issuing stays, which require weighing competing interests and maintaining an even balance. The proponent of the stay must make out a clear case of hardship or inequity in going forward if there is even a fair possibility that the stay will cause damage to someone else. The Court held that "[e]specially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." Stays of an indefinite duration are an abuse of discretion in the absence of a pressing need; a stay must be kept in the bounds of moderation. 299 U.S. at 254-56.

*Peden v. United States*, 512 F.2d 1099 (Ct. Cl. 1975), is a step closer to the facts in this appeal. In *Peden*, a worker who had been removed from government employment sought review of that decision at the Civil Service Commission (CSC). The CSC suspended proceedings in the case for about 20 months because of a district court criminal case based on the same facts that led to his removal. In considering this delay, the Court of Claims stated: "it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way." *Id.* at 1103. Such a freeze, "rises out of a sense that deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material." The Court of Claims upheld the propriety of the stay. *Id.* at 1103-04.

In *Litton Systems, Inc. v. United States*, 215 Ct. Cl. 1056 (1978), the Board conducted a hearing that resulted in a monetary award to the appellant. The appellant later filed suit in the Court of Claims to obtain payment of the award. On the same day, a grand jury returned an indictment against the appellant for submission of a false claim. The government relied on the criminal case to file affirmative defenses, a counterclaim, and a special plea in fraud at the Court of Claims. The District Court later dismissed the indictment for prosecutorial misconduct, which the government appealed to the Fourth Circuit. *Id.* at 1056-57.

In analyzing whether proceedings should be stayed pending resolution of the criminal charges, the Court of Claims observed that determining whether the claim was false would require a great deal of overlap of witnesses and other evidence with the criminal prosecution if it was revived by the Fourth Circuit. It also observed that the "possible pendency of parallel civil and criminal proceedings involving at least many of the same matters cautions us to try to be sure that the broader discovery permissible in civil proceedings is not unnecessarily used to compromise parallel criminal proceedings." *Litton*, 215 Ct. Cl. at 1057-58 (citing *Peden*, 512 F.2d at 1104).

4

Based on these considerations, as well as comity for the Fourth Circuit and the clarification that could be provided by its decision, the Court of Claims held that the case should be stayed until the Fourth Circuit ruled. At that time, the issue as to whether the case should be stayed for the duration of the criminal proceedings could be examined. *Litton*, 215 Ct. Cl. at 1057-58.

In *Luigi Goldstein, Inc. v. United States*, 217 Ct. Cl. 733 (1978), the Court of Claims affirmed a trial judge's order suspending proceedings because of a criminal matter. In *Goldstein*, however, the criminal matter was still at the grand jury investigation stage; no indictment had even been issued. The Court of Claims did not explain its reasoning in depth but, citing *Peden* and *Litton*, it again stated that it was "reluctant to require the Government to proceed in civil litigation when related criminal procedures are still in progress." *Id.* at 734.

Finally, in *Afro-Lecon*, the Federal Circuit vacated an order of the General Services Board of Contract Appeals denying a request for a stay during the pendency of parallel criminal proceedings. The twist in this case was that it was the contractor that requested the stay after its officers, former employees and consultants were advised by counsel not to participate in discovery to avoid incriminating themselves. *Afro-Lecon*, 820 F.2d at 1200. The court of appeals remanded the case to the board, directing it to apply a flexible approach that balanced the needs of both parties. *Id.* at 1202-07. The court did so while observing the potential that broad civil discovery rules may be used by both sides to gain an improper advantage in the criminal case. *Id.* at 1203-04 (citing, *inter alia*, *Peden*); *see Skip Kirchdorfer, Inc.*, ASBCA Nos. 32637, 35074, 89-1 BCA ¶ 21,193 at 106,955.

With this precedent in mind, we return to the four factors identified in *PWC I*:

Factor 1: Similar Facts, Issues, Witnesses

In support of its motion, the government has submitted a letter to DLA from John A. Horn, the United States Attorney for the Northern District of Georgia, dated 30 September 2016 (gov't mot., ex. 1), in which Mr. Horn requests that DLA move to dismiss this appeal pending the outcome of the criminal case. In this letter, Mr. Horn contends that the affirmative defenses pled by DLA in this appeal "encompass identical issues as the pending criminal case" in the district court (gov't mot. at 7). Similarly, the government contends in its brief that the conduct it alleges in its affirmative defenses is "indistinguishable" from the conduct alleged in the superseding indictment (gov't mot. at 10). For example, it states in its fraud-in-the-inducement defense that PWC submitted market basket data and invoices in its proposal that were artificially low, knowing that they would rise post-award, which is the same conduct alleged in count one of the superseding indictment (*id.*). In addition, DLA states that its first material breach defenses are substantially similar to the indictment. For example, the government contends in both that PWC overcharged the government by

5

failing to purchase less expensive products than it was instructed to purchase because the vendor did not provide PWC a prompt payment discount. (*Id.*) *See PWC XI.*

PWC contends that the affirmative defenses are not similar to the criminal case. It bases this contention on the requirement that the government prove specific intent in the criminal case, which, according to PWC, the government does not have to prove at the Board in connection with its affirmative defenses (app. opp'n at 13-14). PWC also points out that its constructive change claim concerning the bobtails is unrelated to the criminal case or the fraud-in-the-inducement and first material breach affirmative defenses (*id.* at 14-15). However, PWC does not appear to dispute that the affirmative defenses and the criminal case involve the same basic facts and witnesses.

We agree with the government that there is a great deal of similarity between the criminal case and its fraud-in-the-inducement and first material breach affirmative defenses. Indeed, the government seems to have used the indictment as a model in crafting its affirmative defense. Thus, for example, both the Board and the district court would be called upon to adjudicate the government's contentions that PWC submitted artificially low market basket pricing in its proposal to obtain the contract, which would involve the same or very similar facts and the same or substantially overlapping witnesses. *See PWC XI.* Moreover, even if we credit PWC's argument that the criminal case is distinct because the government must prove a specific intent to defraud, we do not believe that this changes the fact that the issues in the two cases are similar. As the government observes in its reply, even if its affirmative defenses at the Board do not require it to prove specific intent, it has alleged in those affirmative defenses that PWC acted with knowledge and intent. For example, it alleges in paragraph 5 of its affirmative defenses that PWC knew that the prices it was submitting were artificially low (reply at 5). Thus, we agree with the government that even if the precise elements of the affirmative defenses do not line up with the criminal offenses, the alleged criminal intent of PWC's officers and directors are relevant to this appeal.

Accordingly, we conclude that there is sufficient similarity of facts, witnesses and issues that this factor weighs in favor of the government.

Factors II & III:  Balancing the Harms

Both parties contend that they will be harmed if the Board does not issue a decision in its favor. The government is primarily concerned that PWC will use the much more liberal discovery available at the Board to its advantage. Echoing the decisions in *Peden, Litton, Goldstein,* and *Afro-Lecon,* DLA and U.S. Attorney Horn contend that PWC will gain an inappropriate advantage if it can use the civil discovery rules to circumvent the limitations on criminal discovery in the district court. U.S. Attorney Horn also contends that, due to the similarity in facts, witnesses,

and issues in the two cases, it would be virtually impossible to contain discovery in this appeal so that it does not impact the criminal case (gov't mot., ex. 1 at 5).

The government also contends that our earlier decisions show that the threat of Board discovery prejudicing the government in the criminal case is not just a theoretical problem. Thus, in *PWC I*, we granted a government motion to stay to allow the Department of Justice to complete the criminal investigation. In that decision we stated "[i]t is clear to us...that PWC's primary purpose in wishing to proceed with the appeal is to use the Board's decision to influence the direction of the on-going investigations, and to help its position in potential settlement discussions." *PWC I*, 08-1 BCA ¶ 33,787 at 167,229. Similarly, in ASBCA No. 56022, 13 BCA ¶ 35,201 (*PWC V*), the government moved to dismiss or to place limitations on depositions after PWC was found to be live streaming the contracting officer's deposition to PWC's criminal counsel, who apparently were sending questions for appellant's counsel to ask the contracting officer. The Board denied the motion to dismiss but placed limits on the depositions going forward.

PWC counters by more or less stating that the cat is out of the bag with respect to discovery. It observes that the government has already produced 24 million pages of documents in the criminal case and states that, unless the government is withholding exculpatory materials, "whatever harm broad discovery might have caused the criminal case is a moot issue at this point" (app. opp'n at 17). Moreover, the government states in its brief that PWC has already deposed five witnesses, including two of the contracting officers (gov't reply at 9 n.1).

In light of these significant arguments from appellant, the Board conducted a status conference on 10 November 2016 to get more information concerning the status of discovery (*see* Bd. corr. ltr. dtd. 14 November 2016). The parties reported that significant discovery has taken place, including depositions of two contracting officers. However, the parties have not conducted discovery on the affirmative defenses. Rather, discovery would be expanded due to the Board granting the government leave to amend to add these affirmative defenses. Thus, the danger of civil discovery prejudicing the criminal case still exists.

PWC also contends that it will be prejudiced by a delay caused by dismissal or a stay. It observes that evidence may become stale or unavailable and that witnesses' memories will dim or the witnesses will become unavailable (app. opp'n at 20-21).

PWC's concerns are indeed significant, but it shares in the blame for this matter dragging out for so long. As we found, the government began requiring bobtails nearly four years before PWC submitted its claim (SOF ¶¶ 3, 4). Moreover, as we determined in our opinion on the government's motion to amend, the docket in this appeal has been mostly quiet since PWC filed it in April 2012, with both parties

7

seemingly content to concentrate on the litigation of other appeals. *PWC XI*, ASBCA No. 58088 (8 Nov. 2016).

In light of the Court of Claims and Federal Circuit's decisions in *Peden*, *Litton*, *Goldstein*, and *Afro-Lecon*, we are reluctant to force the government to continue with discovery in this appeal while the criminal proceedings are pending. This is even more so where, as discussed above, PWC has some history of trying to use discovery in Board appeals to gain an advantage in the criminal case. We conclude that the balance of harms weighs in favor of the government.

### Factor IV: Duration

In his non-final report and recommendation on PWC's venue motions in the criminal case issued on 28 September 2016, Magistrate Judge Alan J. Baverman, in response to a government statement that trial was "imminent," wrote: "the Court is now in position to roll out rulings on dispositive and non-dispositive motions, but trial will not likely occur until next year" (gov't mot., ex. 5 at 40-41). We construe this statement to mean that there is a reasonable chance that the criminal case will reach trial in 2017.

After considering the various contentions of the parties, including the government's concern about prejudicing the criminal case and PWC's concern that this appeal will grow stale if it is dismissed, we believe that the best way to balance the parties' competing interests is to stay this appeal for a limited period of time to allow the criminal case to proceed. Accordingly, we will stay this appeal for one year from the date of this decision. At the expiration of that year, the parties shall file a joint status report suggesting further proceedings. If the criminal case is resolved before that time, the parties shall file the status report within two weeks of the conclusion of the criminal case.

### CONCLUSION

The government's motion to dismiss is denied. The government's alternate motion to stay is granted, for one year from the date of this decision.

Dated: 8 December 2016

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

8

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58088, Appeal of Public Warehousing Company, K.S.C., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9